Mark DONOHUE, Plaintiff,

v.

Henry CORNING, John A. Mayer, Frohman Anderson, Bernardo Llovera, Diana Propper De Callejon, Expansion Capital Partners, LLC, Expansion Capital Partners II, LP, and Expansion Capital Partners II—General Partner, LLC, Defendants.

C.A. No. 3733–VCS.

Court of Chancery of Delaware.

Submitted: June 5, 2008.
Decided: June 20, 2008.

Raymond J. DiCamillo, Esquire, Scott W. Perkins, Esquire, Richards, Layton & Finger, P.A., Wilmington, DE; Steven M. Schatz, Esquire, David J. Berger, Esquire, Tracy Tosh Lane, Esquire, Wilson Sonsini Goodrich & Rosati, P.C, Palo Alto, CA, for Plaintiff.

Steven L. Caponi, Esquire, Elizabeth A. Sloan, Esquire, Blank Rome, LLP, Wilmington, DE; Richard E. Levine, Esquire, Alisa J. Baker, Esquire, Levine & Baker, LLP, San Francisco, CA, for Defendants.

OPINION

STRINE, Vice Chancellor.

Through this motion for partial summary judgment, plaintiff Mark Donohue seeks advancement for this action, which he initiated to determine who is in control of defendant Expansion Capital Partners,

LLC. Donohue, who was purportedly removed for cause by a vote of the Non-Managing Members on Expansion's Board in conformity with Expansion's LLC Agreement, challenges his removal by alleging that there was no "Cause" as defined in the LLC Agreement. Donohue bases his claim for advancement on an advancement provision in Expansion's LLC agreement. But I interpret that advancement provision as only providing advancement for the defense or other defensive disposition of an actual or threatened proceeding. Here, because the defendants did not threaten or initiate a proceeding against Donohue, he is not entitled to advancement.

In reaching that determination, I do not accept Expansion's argument that Donohue is suing to determine who is in control of Expansion solely for personal reasons and, for present purposes, assume the truth of Donohue's assertion that he brings suit, at least in relevant part, to protect Expansion and its investors. Nonetheless, even if Donohue's litigation is motivated in part by a concern for Expansion's investors that does not answer the relevant contractual question, which is whether the LLC Agreement provides him with a right to advancement if he chooses to bring a suit individually to contest his removal. In my view, the best reading of the advancement provision in Expansion's LLC Agreement is that it only provides advancement to a person covered by that provision who is in a defensive posture, in the sense of responding to an action or other proceeding relating to his official capacity. I note, however, that the LLC Agreement as written provides an adequate incentive for members and former members such as Donohue to vindicate their contractual rights by providing a mechanism for resolving disputes arising under the LLC Agreement that requires the losing party to pay the costs and fees of the prevailing party.

## I. *Factual Background*

At dispute in this action is control of Expansion Capital Partners, LLC, a "clean technology" venture capital firm that was founded in 2002. Plaintiff Mark Donohue was the Managing Partner, Chairman of the Board, and a Managing Member of Expansion from Expansion's founding until April 27, 2008. On that day, Donohue was purportedly removed from his positions for "Cause" by a "Special Board Approval" under the requirements for removing a Managing Member contained in Expansion's Limited Liability Company Agreement (the "Agreement").[1] The Agreement defines a "Special Board Approval" as "the approval of a majority of the Non-Managing Members then seated on the Board."[2] "Cause" is defined as "engaging in fraud, misappropriation, embezzlement, gross negligence or disloyalty in the performance of duties, or the dereliction of all or substantially all duties, by a Managing Member."[3] Donohue disputes that he was validly removed and seeks an order to that effect under 6 *Del. C.* §§ 18-110 and 18-111. Trial on that issue is imminent and Donohue has brought on this expedited motion to have his litigation costs advanced.

Donohue seeks advancement of his fees and expenses under an advancement and indemnification provision in the Agreement. That section, § 3.5(b) of the Agreement (the "Advancement Provision"), states the following:

---

1. Perkins Aff. Ex. A ("Agreement") § 7.1(b).

2. *Id.* § 1.1.

3. *Id.*

To the fullest extent permitted by law, the Company shall indemnify and hold harmless (but only to the extent of and out of Company assets) the Covered Persons from and against all liabilities and expenses (including, without limitation, judgments, fines, penalties, amounts paid in settlement, attorneys' fees, and costs of investigation) incurred in connection with the defense or disposition of any claim, action, suit, or proceeding, whether civil, criminal, administrative, or investigative, in which the Covered Person is involved, as a party or otherwise, or with which the Covered Person may be threatened, either during the Covered Person's incumbency or thereafter, by reason of having been, or by reason of any action taken by, the Covered Person. The Company shall advance such expenses to the Covered Person upon receipt of· an undertaking from such Covered Person to repay the advanced amount if it is ultimately determined that such Covered Person was not entitled to indemnification.[4]

The parties have attempted to turn this advancement proceeding into a mini-trial on the merits of Donohue's removal. As a trial on that issue will commence in less than a month, I avoid detailing the factual record here. The relevant facts, as I find them based on the limited record for this summary judgment motion, are simple. The defendants decided to remove Donohue for cause. Before actually removing

Donohue, the defendants offered Donohue the option of a reduced role at Expansion. Donohue rejected that option and was then purportedly removed for cause.[5] Throughout the time period leading up to Donohue's removal, Donohue threatened, through his words and actions, that he would seek an adversarial proceeding if the defendants removed him. The defendants responded to Donohue's threats by suggesting that he either accept their offer of a reduced role or face removal for cause. At no point did the defendants indicate to Donohue that they intended to initiate any type of civil, criminal, administrative, or investigative claim, action, suit, or proceeding against him.

## II. *Procedural Framework*

The subject of this opinion is Donohue's motion for a partial summary judgment declaring that he is entitled to advancement. As is trite to say by now, the use of summary judgment is particularly appropriate in advancement disputes.[6] Under the well-known standard for Rule 56 motions, a "motion for summary judgment will be granted only when no genuine issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law."[7] The moving party bears the burden of establishing that there are no issues of material fact, and the court must review all evidence in the light most

---

4. Agreement § 3.5(b). A "Covered Person" includes "the Managing Members, the Venture Members, the members of the Board, a person who, as a representative of the Company, serves as a director, officer, employee, manager or agent of any Portfolio Company or of a managing member of any Portfolio Company and their respective Affiliates." *Id.* § 3.5(a).

5. The defendants with knowledge of the basis for the decision to remove Donohue for cause, Henry Coming, Frohman Anderson, and John

A. Mayer, explain that he was removed "due to fraud and disloyalty in the performance of his duties." Def. Am. Ans. to PL First Set of Interrogs. at 3.

6. *E.g., Weinstock v. Lazard Debt Recovery GP, LLC,* 2003 WL 21843254, at *2 (Del.Ch. Aug. 8, 2003).

7. *Scureman v. Judge,* 626 A.2d 5, 10 (Del.Ch. 1992).

favorable to the non-moving party.[8]

### III. *The Parties' Contentions*

Donohue contends that he is entitled to advancement under the Advancement Provision because: (1) he is a Covered Person; (2) the defendants **"threatened** to remove him for 'Cause' and accused him of ... breach[ing] his duties to Expansion and engag[ing] in malfeasance as a Managing Member of Expansion;"[9] and (3) he is "disposing" of that threatened action by bringing this suit. Thus, Donohue views this action as fitting within the Advancement Provision's mandate that "the Company shall indemnify and hold harmless ... the Covered Persons from and against all liabilities and expenses ... incurred in connection with the defense or disposition of any claim, action, suit, or proceeding, whether civil, criminal, administrative, or investigative, ... with which the Covered Person may be threatened, either during the Covered Person's incumbency or thereafter, by reason of having been, or by reason of any action taken by, the Covered Person."[10] The defendants counter that Donohue has not been threatened with "any claim, action, suit, or proceeding" (a "Proceeding").[11] The defendants also assert that even if Donohue's request for advancement fit within the language of the Advancement Provision, he would not be entitled to advancement because he is acting in furtherance of his own pecuniary interest rather than to fulfill his fiduciary obligations to Expansion.

### IV. *Legal Analysis*

 I start by noting that I will not decide this summary judgment motion on the basis that Donohue is merely acting out of his personal interest. There is color to Donohue's argument that he is pursuing this action "to remedy the wrongful removal of a Managing Member by Defendants on behalf of Expansion and its investors."[12] Although I acknowledge that, as with many disputes, Donohue may have both corporate and personal motivations for bringing this action, Donohue's decision to bring this action is consistent with the policy behind allowing companies to advance funds to and indemnify their directors and officers. As the Delaware Supreme Court has explained:

> The invariant policy of Delaware legislation on indemnification is to promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated. Beyond that, its larger purpose is to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.[13]

---

**8.** *Id.* at 10–11.

**9.** Donohue Op. Br. at 10 (emphasis in original).

**10.** Agreement § 3.5(b).

**11.** Although the defendants facially dispute Donohue's characterization of disposing of a threatened action, the parties actually agree that a "Covered Person can be advanced expenses for *initiating* a claim, but only if he is threatened with a 'claim, action, suit, or pro-

ceeding' that is 'civil, criminal, administrative or investigative.'" Def. Ans. Br. at 16 n. 2 (emphasis added).

**12.** Donohue Op. Br. at 14.

**13.** *Stifel Fin. Corp. v. Cochran,* 809 A.2d 555, 561 (Del.2002) (internal quotations and citations omitted); *see also Essential Enters. Corp. v. Automatic Steel Prods., Inc.,* 164 A.2d 437, 441–42 (Del.Ch.1960) ("I believe my construction of the statute and implementing by-law tends to promote the desirable end that

That policy has supported the indemnification of corporate officials in somewhat analogous intracorporate disputes. For example, in *Hibbert v. Hollywood Park, Inc.*,[14] a company's board of directors split into two factions and those factions became embroiled in a proxy contest. One faction initiated two lawsuits in their own names to compel the competing faction of directors to attend board meetings and make proper disclosures in their proxy statements. The faction instituting the litigation was denied preliminary relief in both lawsuits and thereafter voluntarily dismissed those suits. That faction also lost the proxy contest. They did, however, succeed in obtaining a court order requiring that they be indemnified for the costs of the lawsuits under the company's bylaws. In granting their request for indemnification, the Delaware Supreme Court found that nothing in the company's bylaws, which simply required that the indemnitee be involved "as a party or otherwise," prevented a director from being indemnified for a lawsuit in which he was a plaintiff.[15] In doing so, the Delaware Supreme Court rejected the Superior Court's conclusion that the indemnification provision "appear[s] to have been adopted in contemplation of defensive applications."[16]

The Court explained that it could not "say that such litigation was entirely initiated without regard to any duty the plaintiffs might have had as directors."[17]

■ But I cannot award Donohue advancement merely because Donohue has a plausible argument that he brought suit, at least in part, to advance the interests of Expansion and that granting Donohue advancement in such a situation would arguably comport with the public policy behind allowing indemnification in intracorporate disputes. Rather, because Expansion has nearly unfettered contractual discretion in determining whether to grant advancement,[18] Donohue must establish that he is entitled to advancement under the terms of Expansion's Advancement Provision itself. The method by which Donohue attempts to do so is telling. Instead of arguing that the Advancement Provision contemplates coverage for directors initiating suit to fulfill their fiduciary duties by challenging an allegedly wrongful removal of Expansion's Managing Partner, Donohue contends that he is responding to a threatened Proceeding.[19] In other words, Donohue implicitly acknowledges that the Advancement Provision requires that the action taken by Donohue, although not

corporate officials will *resist what they consider to be illegal removal action*, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated.") (emphasis added).

14. 457 A.2d 339 (Del.1983).

15. *Id.* at 343.

16. *Id.*

17. *Id.* at 344. In *Shearin v. E.F. Hutton Group, Inc.*, Chancellor Allen interpreted *Hibbert* as "recogniz[ing] that permissible indemnification claims will include those deriving from lawsuits brought by directors, officers, agents, etc., *only insofar as the suit was brought as part of the employee's duties to the*

corporation and its shareholders." 652 A.2d 578, 594 (Del.Ch.1994) (emphasis in original). Thus, he dismissed the plaintiff's claim for indemnification because the suits she sought to be indemnified for were "suits plainly sought to advance her own interest, not the interest of the corporation." *Id.* at 594.

18. *See* 6 *Del. C.* § 18–108 ("Subject to such standards and restrictions, if any, as are set forth in its limited liability company agreement, a limited liability company may, and shall have the power to, indemnify and hold harmless any member or manager or other person from and against any and all claims and demands whatsoever.").

19. Donohue Op. Br. at 9–10; Donohue Rep. Br. at 7–9.

strictly limited to defending a suit, be defensive or responsive in nature.[20]

I find Donohue's implicit acknowledgement that conduct must be responsive or defensive in nature to give rise to an advancement right comports with the best interpretation of that Provision. As would be expected, the defendants take the same reading. In other words, both the company whose LLC Agreement is in dispute and the person who was the founder of the company and directed the drafting of that Agreement agree on this interpretive point. As such, I need not dwell on the interpretation of the "in connection with the defense or disposition of" a Proceeding language, language that was notably *absent* from the bylaw at issue in *Hibbert*.[21] I do, however, note that that language was likely added to the Advancement Provision precisely to contract around the result in *Hibbert*, whereby the company could be liable to provide advancement and indemnification for proceedings initiated by directors that were not responsive to an existing or threatened Proceeding.[22] Moreover, the "defense or disposition of"

language would be rendered mere surplusage if it were not interpreted as requiring the action to be defensive or responsive.[23] In other words, without such an interpretation, one could strike that language from the Advancement Provision without changing the meaning of the Advancement Provision. That the remainder of the language in the Advancement Provision is broad does not mean that I should ignore the defensive limitation nor does it mean that the broad language cannot be reconciled with the defensive limitation. For example, the "disposition of" language easily dovetails with the "in which the Covered Person is involved, as a party or otherwise" to cover the situation where, in response to an actual or threatened Proceeding, the Covered Person brings a separate lawsuit to dispose of or negate an actual or threatened Proceeding. Likewise, the same language would likely cover a situation in which a Covered Person retains his own counsel to protect his interests when he is deposed or required to testify before a grand jury as part of a

---

**20.** That, of course, flows from the Advancement Provision's limitation that only expenses "in connection with *the defense or disposition*" of any actual or threatened proceeding be advanced. Agreement § 3.5(b) (emphasis added).

**21.** *See Hibbert*, 457 A.2d at 342.

**22.** One leading treatise on Delaware corporation law explains, after discussing *Hibbert* and its progeny, that corporations should consider including such limiting language in their by-laws if they do not intended to indemnify intracorporate disputes:

> That indemnification under Section 145 extends to expenses incurred by a prospective indemnitee *as a plaintiff in an action* brought in the course of or growing out of his corporate duties is probably a fair construction of the statute's intent. However, the standard applied by the Supreme Court in *Hibbert* and *Roven* can be viewed as

unduly lenient, especially since the Court appeared to downplay the personal interests of the indemnitees being advanced in each litigation. Hence, a corporation wishing to avoid being compelled to indemnify dissidents who sue fellow directors in intracorporate disputes must place appropriate limitations upon its indemnification bylaw. DAVID A. DREXLER, LEWIS S. BLACK, JR. & A. GILCHRIST SPARKS, III, DELAWARE CORPORATE LAW AND PRACTICE § 16.02[3] (2008).

**23.** *See, e.g., NAMA Holdings, LLC v. World Mkt. Ctr. Venture, LLC*, 2007 WL 2088851, at *6 (Del.Ch. July 20, 2007) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court."); *E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) ("[A] court must construe the agreement as a whole, giving effect to all provisions therein.").

governmental investigation of the company or otherwise required to address civil, criminal, administrative, or investigative Proceedings directed at him by other parties as a result of actions taken in his official capacity but that do not involve the Covered Person being formally named as a defendant. The Advancement Provision addresses these situations by providing coverage for the costs Covered Persons incur responding to such matters, although they technically do not require a "defense," by using the term "disposition of."[24]

The problem with Donohue's argument is that he cannot identify the threatened Proceeding that he is defending or disposing of by bringing this suit. The only explicit threat by the defendants was that they would remove him for cause. The defendants followed through on that threat and this suit is a direct response to Donohue's removal. But a for cause removal under the terms of the Agreement is not a Proceeding as contemplated by the Advancement Provision. Donohue knows that and attempts to create a threatened Proceeding by arguing that a for cause removal equates to an accusation that he breached his fiduciary duties to Expansion. But Donohue stretches to turn the accusation that he breached his fiduciary duties into a threatened Proceeding. The biggest reason that Donohue must reach in creating a threatened Proceeding is that defendants repeatedly told Donohue that they were not threatening him with a Proceeding.[25] That is, the removal of Donohue was the only consequence the defendants intended to attach to the actions they said he engaged in that constituted "Cause."[26]

---

**24.** AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 522 (4th ed. 2000) (defining "dispose of" as "[t]o attend to; settle" or "[t]o get rid of"); *see also* BLACK'S LAW DICTIONARY 505 (8th ed. 2004) (defining "disposition" as "[a] final settlement or determination").

**25.** *E.g.,* Baker Aff. Ex. D (email from the defendants' counsel stating that "[n]o such proceeding is pending, and none has been threatened"); *id.* Ex. C (letter from defendants' counsel stating "[defendants] have not threatened a 'claim,' or any litigation"). The only statement by the defendants in the record that could arguably be read as suggesting a threatened Proceeding is a statement from Expansion's counsel on March 7, 2008 that "[o]ur clients are prepared to engage in a mediation process in the hopes of avoiding adversary proceedings." Perkins Aff. Ex. B at 2. But that statement is clearly a response to Donohue's letter the day before to the other Managing Members stating that he wanted mediation, had "hired an outside legal team," that his "team [was] awaiting the name of your attorneys and your suggestions for a mediator," and that he was "hopeful we do not need to get legal depositions under oath, so that we can fully decipher your actions." Propper Aff. Ex. C. Frankly, Donohue has the burden to establish that the defendants have threatened a Proceeding against him and he has been unable to point to any facts suggesting that the defendants intended to do anything other than remove him for cause under the Agreement and continue on with their business, hoping to put the issues with Donohue behind them.

**26.** Having made the decision not to institute or threaten to institute a proceeding against Donohue for his actions and used that decision to their advantage in what they describe as "a game of chess ... on the issue of advancement," the defendants are stuck with that decision. Def. Ans. Br. at 7; *see also id.* at 14 ("The fact is that, from the beginning, Defendants were acutely aware of the Advancement Provision and went to extraordinary lengths to make sure that it did not threaten or take any action that would trigger a right to advancement. Indeed, despite [Donohue's behavior], Defendants made the hard decision NOT to institute and not to threaten to institute any proceedings against Donohue. No counter-claim was threatened or filed in the arbitration. No counterclaim has been threatened or filed here."). That is, the defendants are estopped from later initiating any proceeding against Donohue for the actions at dispute in this action. *See, e.g., In re Silver Leaf, L.L.C.,* 2004 WL 1517127, at *2 (Del.Ch. June 29, 2004) ("Judicial estoppel

The critical question therefore is whether the allegation that Donohue breached his fiduciary duties, which was made solely to support his removal for cause, and combined with multiple statements that the defendants were not threatening any "claim, action, suit, or proceeding" fits within the Advancement Provision's definition of a threatened "claim, action, suit, or proceeding." Looking to the dictionary is not particularly helpful because threaten can mean "[t]o express a threat against," which suggests an explicit threat of a proceeding would be required, or "[t]o give signs or warnings of," which suggests the mere possibility of a future proceeding would suffice.[27] What is informative, however, is looking at the Advancement Provision as a whole. The Provision's limitation that expenses will only be advanced for defensive or responsive actions would be eviscerated by taking an overly broad reading of threatened Proceedings. In other words, if any cloud on the horizon could constitute a threatened Proceeding, the language specifically included in the bylaws to limit advancement to defensive or responsive actions would become meaningless because the Covered Person could find a threatened Proceeding to use as a pretext in initiating whatever type of affirmative action he desired to bring. This dispute provides an example of that. Here, Donohue wishes to dispute his removal for cause, but the Advancement Provision does not grant advancement for such an action. Donohue, therefore, seeks to recast this action as responsive to a threatened Proceeding for breach of fiduciary duty that the defendants have expressly disclaimed.

Put simply, I cannot ignore that with regard to proceedings by Expansion against a Covered Person, the Advancement Provision is best interpreted as giving Expansion discretion as to whether to institute or threaten a proceeding against a Covered Person in a manner that would trigger that Covered Person's right to advancement. There is nothing invidious or unreasonable about interpreting the Advancement Provision that way.[28] Moreover, the LLC Agreement itself contains an incentive for Members or Formers Members to bring meritorious disputes over the LLC Agreement or the actions of

prevents a litigant from advancing an argument that contradicts a position previously taken by that same litigant, and that [a court] was persuaded to accept as the basis for its ruling. Judicial estoppel is an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.") (internal quotations and citations omitted).

**27.** AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1801 (4th ed. 2000); *see also* BLACK'S LAW DICTIONARY 1519 (8th ed. 2004) (defining a "threat" as a "communicated intent to inflict harm or loss on another" or an "indication of approaching menace"). The only relevant case cited by Donohue is unhelpful to him because the threat in that suit was much more palpable than the threat in this suit. *See Schoon v. Troy Corp.*, 2008 WL 821666, at *8 (Del.Ch. Mar. 28, 2008) (finding

that a director was threatened with a proceeding where the company unsuccessfully attempted to interject fiduciary duty claims into a § 220 action as counterclaims against the director, continued to actively investigate those claims after the counterclaims had been dismissed, and ultimately instituted a separate action based on the fiduciary duty claims); *see also id.* ("Troy exhibited its *clear intention* to raise the fiduciary duty claims against Schoon by naming him in the counterclaim.") (emphasis added).

**28.** *See Gentile v. SinglePoint Fin., Inc.*, 787 A.2d 102, 110 (Del.Ch.2001) (interpreting a more restrictive limitation in an advancement provision that required the corporate official to be a named defendant or respondent in a proceeding in accordance with its plain language even though "such a bright line rule leads to some strategic behavior by the parties").

other Members—the Agreement requires that the losing party bear its own fees as well as the fees of the prevailing party.[29]

### V. *Conclusion*

For the foregoing reasons, I deny Donohue's motion for partial summary judgment and dismiss Count II of the amended complaint. Consistent with that ruling, I deny Donohue's request for an award of fees on fees. **IT IS SO ORDERED.**

---

**29.** Agreement § 12.2. The LLC Agreement contemplates that disputes under it will be resolved in arbitration. But the parties here agreed to forego arbitration and resolve their disputes in this court.