# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| INTERNATIONAL RAIL PARTNERS LLC, BOCA EQUITY PARTNERS, LLC, PATRIOT EQUITY, LLC and GARY O. MARINO, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2020-0177-PAF |
| AMERICAN RAIL PARTNERS, LLC, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: August 18, 2020
Date Decided: November 24, 2020

Brian R. Lemon, Andrew S. Dupre, Stephanie Dallaire, MCCARTER & ENGLISH, LLP, Wilmington, Delaware; *Attorneys for Plaintiffs International Rail Partners LLC, Boca Equity Partners LLC, Patriot Equity, LLC, and Gary O. Marino.*

Elizabeth S. Fenton, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, Delaware; Stephen Novack and Joshua E. Liebman, NOVACK AND MACEY LLP, Chicago, Illinois; *Attorneys for Defendant American Rail Partners, LLC.*

**FIORAVANTI, Vice Chancellor**

## I. INTRODUCTION

The plaintiffs seek advancement of their legal fees and expenses incurred in defending an action filed against them by a limited liability company. For purposes of this action, there is no dispute that the plaintiffs are covered persons under the broad advancement and indemnification provisions of the company's limited liability company agreement. Notwithstanding the broad language in that agreement, the company refuses to advance fees and expenses because the indemnification and advancement provisions do not expressly state that they apply to claims filed by the company, which the company refers to as "first-party claims."

The plaintiffs and defendant have moved for judgment on the pleadings. This Opinion grants the plaintiffs' motion and denies the defendant's motion.

## II. BACKGROUND[1]

Defendant American Rail Partners, LLC ("American Rail" or the "Company") is a Delaware limited liability company with two members: Plaintiff International Rail Partners LLC ("IRP") and non-party Newco SBS Holdings, LLC ("SBS").[2] American Rail is governed by a June 28, 2019 Amended and Restated

---

[1] The facts are taken from the pleadings and documents integral thereto.

[2] Compl. ¶ 7; Ans. ¶ 7.

Limited Liability Company Agreement (the "LLC Agreement").[3] The LLC Agreement is governed by Delaware law.[4]

The LLC Agreement provides that the Company "shall be managed, operated and controlled" by its Board of Directors except as expressly provided in the LLC Agreement or the Delaware Limited Liability Company Act (the "LLC Act").[5] The LLC Agreement identifies Plaintiff Gary O. Marino as a director and Chairman of the Company's Board of Directors, and as the Company's Chief Executive Officer.[6] The LLC Agreement also provides that "day-to-day management of the Company shall be performed by the IRP Member in accordance with the terms of the Management Agreement while it is in effect," and specifies that certain actions require the consent of SBS.[7] The terms of the August 2, 2018 Management Agreement are "incorporated into [the LLC] Agreement by reference."[8]

Plaintiff Boca Equity Partners LLC ("BEP") owns 100% of IRP.[9] Marino controls BEP and is IRP's Chief Executive Officer.[10] Marino also controls Patriot

---

[3] The LLC Agreement is attached as Exhibit A to the Complaint.

[4] *Id.* § 12.12.

[5] *Id.* § 7.01(a).

[6] *Id.* §§ 7.02(a), 7.02(b), and Schedule 7.09.

[7] *Id.* § 7.01(c).

[8] *Id.* § 12.09.  The Management Agreement is attached as Exhibit B to the Complaint.

[9] Compl. Ex. C ¶ 4.

[10] *Id.*

Equity LLC ("Patriot"),[11] which is a Florida limited liability company. BEP, IRP, Marino, and Patriot are referred to collectively herein as "Plaintiffs."

Around mid-2019, SBS and IRP had disagreements over the management of the Company. As a result, the Management Agreement was terminated pursuant to a July 19, 2019 termination letter.[12] On February 28, 2020, American Rail filed a complaint in the Delaware Superior Court asserting claims against Plaintiffs.[13] The Superior Court Action is captioned *American Rail Partners, LLC et al. v. International Rail Partners LLC et al.*, C.A. No. N20C-02-283 EMD (the "Superior Court Action").[14] The Superior Court Action alleges, among other things, that IRP and Marino engaged in mismanagement and unjustly enriched Marino and his affiliates at the expense of American Rail.[15]

On March 5, 2020, Plaintiffs' counsel sent a letter to American Rail demanding advancement and indemnification to cover the claims asserted in the Superior Court Action. The demand letter sought a response by March 9 (*i.e.*, within

---

[11] *Id.*

[12] Compl. ¶¶ 18–19; Ans. ¶ 20.

[13] Compl. ¶ 21; Ans. ¶ 21.

[14] American Rail agreed not to press the Superior Court Action until this advancement action is adjudicated. Dkt. 25 Tr. 54. On October 14, 2020, the Superior Court Action was transferred to this Court. *See American Rail Partners, LLC et al. v. International Rail Partners, LLC et al.*, C.A. No. 2020-0890-PAF (Del. Ch.). For the sake of clarity, the Court will continue to refer to the underlying action giving rise to the advancement action as the Superior Court Action.

[15] Compl. ¶ 24; Ans. ¶ 24.

two business days).[16] On March 9, 2020, Plaintiffs filed a verified complaint for advancement pursuant to Section 18-108 of the LLC Act.[17] Plaintiffs also seek their attorneys' fees and costs incurred in this advancement proceeding, as well as pre- and post-judgment interest from the date of the demand letter.[18]

On March 25, 2020, Defendant filed a Motion to Dismiss. After full briefing and argument, the Court denied that motion in an oral ruling on April 28, 2020. Both parties have since moved for judgment on the pleadings.

## III. LEGAL ANALYSIS

### A. The Legal Standard

A motion for judgment on the pleadings under Court of Chancery Rule 12(c) may be granted if "no material issue of fact exists and the movant is entitled to judgment as a matter of law." *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *accord Alliant Techsystems, Inc. v. MidOcean Bushnell Hldgs., L.P.*, 2015 WL 1897659, at *6 (Del. Ch. Apr. 24, 2015). "When there are cross-motions for judgment on the pleadings, the court must accept as true all of the non-moving party's well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party." *OSI Sys., Inc. v.*

---

[16] Compl. ¶¶ 27–28; Ans. ¶¶ 27–28.

[17] *See* Compl. ¶ 1.

[18] Compl., Relief Requested ¶¶ C, D.

5

*Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006). The Court may also consider the unambiguous terms of exhibits attached to the pleadings and documents incorporated by reference. *Id*.

"Advancement cases are particularly appropriate for resolution on a paper record, as they principally involve the question of whether claims pled in a complaint against a party . . . trigger a right to advancement under the terms of a corporate instrument." *DeLucca v. KKAT Mgmt., LLC*, 2006 WL 224058, at *6 (Del. Ch. Jan. 23, 2006). The cross motions here turn on the construction of the LLC Agreement. Alternative entity agreements "are a type of contract." *Murfey v. WHC Ventures, LLC*, 236 A.3d 337, 350 (Del. 2020) (analyzing a limited partnership agreement). "When analyzing an LLC agreement, a court applies the same principles that are used when construing and interpreting other contracts." *Godden v. Franco*, 2018 WL 3998431, at *8 (Del. Ch. Aug. 21, 2018).

When the "meaning [of a contract] is unambiguous and the underlying facts necessary to its application are not in dispute, judgment on the pleadings is an appropriate procedural device for resolving the dispute." *CorVel Enter. Comp, Inc. v. Schaffer*, 2010 WL 2091212, at *1 (Del. Ch. May 19, 2010). "When ruling on dueling Rule 12(c) motions that turn on an issue of contract construction, the Court must deny both motions if each has advanced reasonable but conflicting readings of the [contract in dispute], or, in other words, if the contract provision in question is

6

ambiguous." *Gibraltar Private Bank & Tr. Co. v. Boston Private Fin. Hldgs., Inc.*, 2011 WL 6000792, at \*2 (Del. Ch. Nov. 30, 2011) (internal citation omitted); *accord Freeman Family LLC v. Park Avenue Landing LLC*, 2019 WL 1966808, at \*4 (Del. Ch. Apr. 30, 2019).

## B.     The LLC Act

A limited liability company's authority to provide for indemnification and advancement is grounded in Section 18-108 of the LLC Act, which provides:

> Subject to such standards and restrictions, if any, as are set forth in its limited liability company agreement, a limited liability company may, and shall have the power to, indemnify and hold harmless any member or manager or other person from and against any and all claims and demands whatsoever.

6 *Del. C.* § 18-108.  The statute is "broadly enabling." *Morgan v. Grace*, 2003 WL 22461916, at \*2 (Del. Ch. Oct. 29, 2003).

## C.     The LLC Agreement's Indemnification and Advancement Provision

The LLC Agreement provides for indemnification and advancement.  Section 10.02(c)(i) states, in pertinent part:

> *The Company shall indemnify*, defend *and hold harmless each Covered Person against* any losses, claims, damages, liabilities, expenses (including all reasonable fees and expenses of counsel), judgments, fines, settlements and other amounts arising from *any and all claims*, *demands*, actions, suits or proceedings, in which such Covered Person may be involved or become subject to, in connection with any matter arising out of or in connection with the Company's business or affairs, or this Agreement or any related document, *unless such* loss, *claim*, damage, liability, expense, judgment, fine, settlement or other amount

7

(A) *is a result of* a Covered Person acting in *bad faith, knowing violation of Law or willful misconduct* on behalf of the Company and materially injurious to the Company *or* (B) *results from a material breach of the contractual obligations under the Management Agreement* or results from a material breach by such Covered Person of a Specified Covenant. *If any Covered Person becomes involved in any capacity in any action, suit, proceeding* or investigation *in connection with any matter arising out of or in connection with the Company's business or affairs, or this Agreement or any related document, other than* (x) by reason of any act or omission performed or omitted by such Covered Person that was in *bad faith, knowing violation of Law or willful misconduct* on behalf of the Company and materially injurious to the Company, or (y) *as a result of a material breach of the contractual obligations under the Management Agreement* or any material breach by such Covered Person of a Specified Covenant, *the Company shall reimburse such Covered Person for its reasonable legal and other reasonable out-of-pocket expenses . . . as they are incurred* in connection therewith; provided that such Covered Person shall promptly repay to the Company the amount of any such reimbursed expenses paid to it if it shall be finally judicially determined that such Covered Person was not entitled to indemnification by, or contribution from , the Company in connection with such action, suit, proceeding or investigation. . . .[19]

Covered Person is defined as:

[E]ach Member or an Affiliate thereof, and each current or former shareholder, member, partner, director, representative, officer, fiduciary or authorized agent or trustee of a Member or an Affiliate thereof, and each officer or authorized agent of the Company or of an Affiliate controlled by the Company, including each Director and Officer, in each case, in his capacity as such.[20]

---

[19] LLC Agreement § 10.02(c)(i) (emphasis added).

[20] LLC Agreement § 1.01. The term Affiliate, as to any specified Person, is defined in pertinent part as "any other Person directly or indirectly controlling, controlled by or under direct or indirect common control with such specified Person," with certain exceptions not applicable for purposes of this Opinion. *Id.* The term Person is defined, in pertinent part, as any individual or limited liability company. *Id.*

8

### D. Plaintiffs Are Entitled to Advancement Under the Terms of Section 10.02(c)(i).

Section 10.02(c)(i) is quite broad. It specifies in unambiguous terms that "[t]he *Company shall indemnify*, defend *and hold harmless each Covered Person* against any losses [and] claims . . . (including all reasonable fees and expenses of counsel) . . . *arising from any and all claims* . . . actions, suits or proceedings . . . in connection with any matter arising out of or in connection with the Company's business or affairs, or this Agreement or any related document."[21]

For purposes of the cross-motions, there is no dispute that each of the Plaintiffs qualifies as a Covered Person.[22] In addition, the Company does not contend, solely for purposes of the cross-motions, that any of the contractually enumerated exceptions to indemnification or advancement apply.[23] Defendant also concedes that it must provide advancement if Plaintiffs could ultimately be entitled to indemnification.

---

[21] LLC Agreement § 10.02(c)(i) (emphasis added).

[22] Oral Argument via Zoom on Cross-Motions for Judgment on the Pleadings ("JOP Hr'g") (Dkt. 41) Tr. 19 (DEFENDANT'S COUNSEL: "We do not concede that the plaintiffs are covered by this indemnification provision for all purposes. We have attacked the coverage on one ground, and one ground only, for purposes of these cross-motions, and that is that it does not cover first-party claims.").

[23] *See* Def.'s Combined Opening & Answering Br. 16 ("The Company does not now argue that advancement should be denied because Plaintiffs acted in bad faith or materially breached the Management Agreement.").

9

Although "advancement is not ordinarily dependent upon a determination that the party in question will ultimately be entitled to be indemnified," *Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Hldg. Co*., 853 A.2d 124, 128 (Del. Ch. 2004), Defendant contends this is not an ordinary case. Defendant argues that the claims at issue in the Superior Court Action "can never be indemnifiable, [so] the indemnification issue can be decided now and the issue is ripe."[24]

Despite the broad scope of Section 10.02(c)(i) of the LLC Agreement, the Company contends that Plaintiffs cannot be indemnified for any of the claims in the Superior Court Action. The Company argues that Section 10.02(c)(i) does not provide indemnification for claims between the Company and any Covered Person—what it calls "first-party claims." Because the Superior Court Action only asserts claims by the Company against the Plaintiffs here, the Company argues there can be no obligation to indemnify the Plaintiffs in the Superior Court Action under any circumstances and, thus, there is no obligation to advance any attorneys' fees and expenses that the Plaintiffs incur in that action.[25]

Defendant's argument is not based upon a plain reading of Section 10.02(c)(i). Indeed, Defendant has candidly acknowledged that the language in Section

---

[24] Def.'s Combined Opening & Answering Br. 16 (Dkt. 34).

[25] The parties have briefed this motion as if all of the claims in the Superior Court Action are within the Company's definition of "first-party claims."

10.02(c)(i) "may appear sufficiently broad to include first-party claims."[26] Instead, Defendant contends that an indemnification or advancement provision may only cover first-party claims if it expressly says so. That argument is grounded in a line of decisions which established a presumption that a standard indemnification provision in a bilateral commercial contract would not be presumed to provide for fee-shifting. Those cases are addressed in turn.

The leading Delaware case on this issue is *TranSched Sys. Ltd. v. Versyss Transit Solutions, LLC*, 2012 WL 1415466 (Del. Super. Mar. 29, 2012). In *TranSched*, a party to an asset purchase agreement obtained a jury verdict against the counterparty for breach of contract. The prevailing party later sought to recover attorneys' fees under a standard indemnity clause in the purchase agreement.[27] After

---

[26] Def.'s Opening Br. in Support of its Mot. to Dismiss 11 (Dkt. 10).

[27] The relevant provision stated:

> In the event [Versyss] breaches (or in the event any third party alleges facts that, if true, would mean [Versyss] has breached) any of its representations, warranties, and covenants contained in this Agreement, and provided that [TranSched] makes a written claim for indemnification against [Versyss] within such survival period, then [Versyss] shall jointly and severally indemnify and hold harmless [TranSched] from and against the entirety of any Adverse Consequences [TranSched] may suffer through and after the date of the claim for indemnification (including any Adverse Consequences) [TranSched] may suffer after the end of any applicable survival period) resulting from, arising out of, relating to, in the nature of, or caused by the breach (or the alleged breach).

*TranSched*, 2012 WL 1415466, at *1 (alterations in original). Adverse Consequences was defined to include attorneys' fees. *Id.*

11

noting that Delaware generally follows the American Rule, whereby litigants must pay their own attorneys' fees, the Court held that the plaintiff could not turn an indemnity clause into a fee-shifting provision with respect to claims between the contracting parties. Relying largely upon *Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275 (Md. 2008), the Superior Court concluded that the American Rule "would be 'gutted' if the court implied a fee-shifting provision in first-party actions." *TranSched*, 2012 WL 1415466, at \*2 (quoting *Nova*, 952 A.2d at 285). Instead, the Superior Court held that "indemnity agreements are presumed not to require reimbursement for attorneys' fees incurred as a result of substantive litigation between the parties to the agreement absent a clear and unequivocal articulation of that intent." *TranSched*, 2012 WL 1415466, at \*2 (emphasis omitted). The court did not, however, articulate a bright-line test:

> [T]here is no definitive language that must be used or phrases that have been routinely held to allow for such recovery in first-party actions. Each provision is unique and must be decided under the facts of that particular case.

12

*Id.* at *2.[28]

In *Deere & Co. v. Exelon Generation Acquisitions, LLC*, 2016 WL 6879525 (Del. Super. Nov. 22, 2016), the court followed *TransSched*, holding that a contracting party could not use a standard indemnity provision to recover attorneys' fees against a counterparty to the contract because it did not reflect an "intent to create a clear and unequivocal agreement to shift fees in first-party actions." 2016 WL 6879525, at *2.

In *SARN Energy LLC v. Tatra Defence Vehicle A.S.*, 2019 WL 6525256 (Del. Super. Oct. 31, 2019), the court relied upon *TranSched* and *Deere* and held that a standard indemnity provision in a commercial contract did not entitle the prevailing party in a breach of contract case to its attorneys' fees because the provision did not state that it applied to first-party claims. 2019 WL 6525256, at *1–2.

---

[28] At argument on its earlier motion to dismiss, Defendant took the position that an indemnification provision in an LLC Agreement can apply to first-party claims only if it expressly states that it applies to first-party claims. Telephonic Arg. on Def.'s Mot. to Dismiss (Dkt. 25) Tr. at 17–18 ("THE COURT: Right. So is it your argument, as I understand it from your briefing and your argument today, that an indemnification provision in a limited liability company agreement, in order for it to cover first-party claims, must expressly state that it covers first-party claims? DEFENDANT'S COUNSEL: That is correct, Your Honor."). Defendant has now retreated and offers a more nuanced argument. Def.'s Combined Opening & Answering Br. 4 ("Magic words, such as 'first-party' are not required, and the Company never argued they were. But broad phrases like 'any and all' are uniformly not considered sufficient by Delaware courts."). *See also* JOP Hr'g Tr. 25 (DEFENDANT'S COUNSEL: "What I meant to say, and what I will say now, is that although those specific words do not have to be used, whatever words are used must specifically, clearly, and unequivocally cover the concept of first-party claims.").

In *Winshall v. Viacom Int'l Inc.*, 2019 WL 5787989 (Del. Super. Nov. 6, 2019), the court, relying on *TransSched*, held that a standard indemnity clause in a merger agreement did not constitute a fee-shifting provision for first-party claims because the agreement did not contain "explicit language that [it] applie[d] to the reimbursement of attorneys' fees and expenses on first-party claims between the parties."  2019 WL 5787989, at *5.

Most recently, *In re Bracket Hldg. Corp. Litig.*, 2020 WL 764148 (Del. Super. Feb. 7, 2020), following *TranSched*, held that standard indemnity provisions in a stock purchase agreement and an insurance policy did not constitute a fee-shifting provision between the parties because it did not contain language reflecting such an intent.  2020 WL 764148, at *16.

*Senior Housing Capital, LLC v. SHP Senior Housing Fund, LLC*, 2013 WL 1955012 (Del. Ch. May 13, 2013), is the only decision from this Court cited by the parties on this issue.  There, then-Vice Chancellor Strine, addressing an issue without the benefit of "responsive briefing," followed *TransSched* in holding that the indemnity provision in a management agreement was not a fee-shifting provision between the parties because it did not contain language indicating an intent to cover first-party claims.  2013 WL 1955012, at *44–45.[29]  Most recently, in *Nasdi Hldgs.,*

[29] In *Senior Housing*, the Court rejected shifting fees for claims arising out of the management agreement as described above, but awarded attorneys' fees and costs for successfully litigating claims arising out of an LLC Agreement. *Id.*  The LLC Agreement

14

*LLC v. N. Am. Leasing, Inc.*, 2020 WL 1865747, at \*5–6 (Del. Ch. Apr. 13, 2020) (ORDER), this Court, relying on *TranSched*, also rejected an attempt to turn a standard indemnity provision in a commercial contract into a fee-shifting provision.

The parties here were unable to locate any case applying the first-party/third-party distinction to an indemnification or advancement provision in a certificate of incorporation, corporate bylaws, limited partnership agreement, or limited liability company agreement.[30] Defendant, relying on the proposition that limited liability company agreements are to be construed like any other contract, insists that "there is no good reason why the Rule [of *TranSched*] does not or should not apply to LLC operating agreements."[31]

Defendant's argument, however, ignores the fundamental distinction that the *TranSched* line of cases involved arm's length, bilateral, commercial contracts, where a counterparty sought to turn an indemnification provision into a fee-shifting provision. Unlike typical commercial contracts, indemnification and advancement

in *Senior Housing*, however, contained a straightforward fee-shifting provision that awarded "reasonable attorneys' fees and court costs" to the prevailing party in litigation between the parties. *Id.* at \*44.

[30] In *Murphy v. Murphy O'Brien East Village LLC*, C.A. No. 2019-0045-KSJM (Del. Ch. May. 1, 2019) (TRANSCRIPT), which was not referenced in the parties' briefs, the Court was presented with the first-party/third-party claim distinction in an advancement action, but the applicable limited liability company agreements specifically provided advancement for "a third party claim or action." Thus, the Court did not need to decide the issue presented here.

[31] Def.'s Combined Opening & Answering Br. 22.

provisions in LLC agreements are derived from clear statutory authority and apply much more broadly.

The LLC Act allows a limited liability company to provide for indemnification as to "any and all claims and demands whatsoever," "[s]ubject to such standards and restrictions, if any, as are set forth in [the] limited liability company agreement." 6 *Del. C.* § 18-108. The statute prescribes that the contract may indemnify any person to the fullest extent possible by contract. The only restrictions are those expressly set forth in the contract.

As the leading treatise on Delaware limited liability companies describes Section 18-108: "Such an explicit statement of specified limited liability company power does not appear frequently in the []LLC Act. The clarity of the provision regarding power to indemnify, located in Section 18-108, underscores an effort to avoid any uncertainty or negative implication that might exist if the statute were silent on this important point." Robert L. Symonds, Jr. & Matthew J. O'Toole, *Symonds & O'Toole on Delaware Limited Liability Companies* § 11.01[A][1], at 11–3 (2nd ed. 2019). The authors note that,

> unlike the [Delaware General Corporation Law], the []LLC Act makes no distinction between indemnification as to claims by or on behalf of the limited liability company and indemnification as to other claims. The []LLC Act does not circumscribe the liabilities and expenses against which the company may provide indemnification. . . . The disparate treatment of entity power to indemnify under the []LLC Act as compared to the [Delaware General Corporation Law] highlights the

16

contractual orientation and flexibility of Delaware's limited liability company law.

*Id.* § 11.01[A][2], at 11–3 to 11–4 (comparing Section 18-108 of the LLC Act with Section 145(b) of the Delaware General Corporation Law) (citations omitted).[32]

If Defendant's position is to be accepted, an LLC Agreement that uses the precise language of the statute to provide for indemnification and advancement to all of its members, managers, and other specified persons as to "any and all claims whatsoever" does not mean what it says. Instead, according to the Defendant, it means only "any and all third-party claims." Defendant maintains that an indemnification or advancement provision can only apply to "any and all claims" if it also further specifies that it applies to first-party claims. I disagree.

Defendant effectively seeks to restrict the broad grant of statutory authority under Section 18-108 by engrafting a concept that applies to bilateral commercial contracts to the LLC Agreement. To be sure, alternative entity agreements "are a type of contract," *Murfey*, 236 A.3d at 350. But as former Chief Justice Steele

---

[32] The treatise authors acknowledge the potential public policy concerns that could arise in the anomalous situation where the limited liability company were allowed "to indemnify a manager against a judgment in favor of the company itself entered in a derivative suit." Symonds & O'Toole, §11.01[A][3][b], at 11-6. The advancement action currently before the Court does not present that scenario. *See Adv. Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992) (noting that "the advancement decision is essentially simply a decision to advance credit" to an individual); *see also Emerging Europe Growth Fund L.P. v. Figlus*, 2013 WL 1250836, at *4 (Del. Ch. Mar. 28, 2013) (observing that the right to advancement "is not dependent upon a determination that the party in question ultimately will prevail or be entitled to indemnification").

17

emphasized while serving on this Court, "another interpretative principle comes into play" when construing indemnification and advancement provisions in corporate instruments. *DeLucca*, 2006 WL 224058, at *7. Indemnification and advancement provisions in an entity's governing document serve a broader public policy.

> Delaware has a strong public policy in favor of assuring key corporate personnel that the corporation will bear the risks resulting from performance of their duties on the grounds that such a policy best encourages responsible persons to occupy positions of business trust, so Delaware courts have read indemnification contracts to provide coverage when that is reasonable.

*Id*. "Indemnification and the subsidiary concept of advancement are intended to encourage persons to serve in a company, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity will be borne by the corporation they serve." *Fillip v. Centerstone Linen Servs., LLC*, 2013 WL 6671663, at *12 (Del. Ch. Dec. 3, 2013) (internal quotations omitted). The same policy reasons supporting advancement under our corporation law applies to "actors for other entities, including LLCs." *Costantini v. Swiss Farm Stores Acq. LLC*, 2013 WL 4758228, at *1 (Del. Ch. Sept. 5, 2013), *opinion withdrawn in part on reargument*, 2013 WL 6327510 (Del. Ch. Dec. 5, 2013); *accord Tulum Mgmt. USA LLC v. Casten*, 2015 WL 7269811, at *5 (Del. Ch. Nov. 9, 2015). The purpose of incorporating the statutory language into an LLC agreement "is to allow . . . entities to attract talented individuals to act on behalf of the company by limiting the burdens of potential litigation against them." *Costantini*, 2013 WL 4758228, at *5.

18

Given the statutory framework, the broad language of the LLC Agreement's indemnification provision, and the strong public policy in favor of indemnification and advancement, I conclude that the first-party/third-party claim distinction applied in the *TranSched* line of cases is inapplicable here. I decline to elevate an interpretive presumption applied to commercial contracts above the strong public policy of advancement and indemnification, particularly in light of the "capacious and generous standard" articulated in the American Rail LLC Agreement. *DeLucca*, 2006 WL 224058, at *2; *see Zimmerman v. Crothall*, 62 A.3d 676, 697 (Del. Ch. 2013) ("If parties to an LLC operating agreement intend to deviate from the meaning that a reasonable investor would attribute to [the] use of a term . . . it is incumbent upon them to manifest that intent.").

### E. The Fee-Shifting Provision of the LLC Agreement and the Management Agreement Do Not Negate the Plain Language of Section 10.02(c).

Defendant cites to the fee-shifting provision in Section 12.07 of the LLC Agreement as further support for not construing Section 10.02(c)(i) to apply to first-party claims.[33] This argument is unpersuasive. The existence of a fee shifting

---

[33] Section 12.07 states, in pertinent part: "In the event that any Dispute between or among any of the Company or the Members should result in litigation or arbitration, the prevailing party in such Dispute shall be entitled to recover from the other party all reasonable attorneys' fees, costs and other expenses incurred by the prevailing party in connection with such Dispute. Any judgment or order entered in such action shall contain a specific provision providing for the recovery of attorneys' fees, costs and other expenses incurred

19

provision in the LLC Agreement, which expressly only applies to Members, does not eviscerate the indemnification and advancement rights contained in Section 10.02(c)(i).  *See Donohue v. Corning*, 949 A.2d 574, 581–82 (Del. Ch. 2008) (holding advancement provision was limited to defensive actions while also acknowledging existence of fee shifting provision in the same LLC agreement); *Morgan v. Grace*, 2003 WL 22461916, at \*2–3 (Del. Ch. Oct. 29, 2003) (advancement action where LLC agreement included separate provisions for indemnification/advancement and fee shifting).  Similar to the fee shifting provision in *Morgan*, Section 12.07 "speaks to an obligation for the eventual payment of legal expenses and does not address advancement of legal fees and therefore is not facially applicable to the issue before the court."  *Morgan*, 2003 WL 22461916, at \*3.  Nor does that provision reflect an unambiguous restriction on the right to advancement.

Defendant also points to the Management Agreement as confirmation that there can be no indemnification for first-party claims under the LLC Agreement. The Management Agreement, which is incorporated into the LLC Agreement, contains its own indemnification provision:

> The Company shall defend, indemnify, and hold harmless, the Manager and each current or former affiliate, equityholder, member, director, representative, officer, fiduciary, employee, independent contractor, agent, successor and permitted assign of any of the foregoing, including the Personnel from and against any and all Claims *brought by unrelated*

---

in enforcing such judgment and an award of prejudgment interest from the date of the breach at the maximum rate of interest allowed by law."  LLC Agreement § 12.07.

20

*third parties*, arising out of or resulting from the Manager providing the Services . . . .

Management Agreement § 1.5(b) (emphasis added).

This indemnification provision does not aid Defendant's construction of Section 10.02 of the LLC Agreement. The Management Agreement indemnification provision expressly covers claims "brought by unrelated third parties." *Id.* This reflects that the drafters knew how to craft an indemnification provision that distinguished between first-party and third-party claims and did so in an agreement entered into at the same time as the original LLC Agreement. Thus, under Defendant's construction of the indemnification clause, the language "brought by unrelated third parties" would be surplusage, resulting in an unreasonable construction of the contract.[34]

Defendant's argument also ignores the breadth of Section 10.02(c)(i) of the LLC Agreement, which provides indemnification to any Covered Person as to "any losses, claims, damages, liabilities, expenses (including all reasonable fees and expenses of counsel) . . . arising out of or in connection with the Company's business or affairs, or this Agreement or any related document, unless such loss, claim . . . or other amount . . . results from a material breach of the contractual obligations under

---

[34] *See Osborn v. Kemp*, 991 A.3d 1153, 1159 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage." (internal quotations omitted)).

the Management Agreement" as well as advancement. LLC Agreement § 10.02(c)(i). The unambiguous language of Section 10.02(c)(i) covers any claims or contractual obligations under the Management Agreement.[35]

The Management Agreement provides that IRP will provide services to the Company, which includes providing "executives to serve as corporate officers of the Company and its Subsidiaries." Management Agreement § 1.1. Marino executed the Management Agreement on behalf of the Company as its CEO and on behalf of IRP, as its sole managing member. Defendant argues that the Management Agreement is the only possible source of indemnification because the claims in the Superior Court Action arise from IRP providing services to the Company.[36] That argument, however, is belied by the Company's positions in the Superior Court Action.

First, the Company seeks an award of its attorneys' fees in the Superior Court Action. The Management Agreement, however, does not provide for fee shifting. Instead, the Company's fee request in the Superior Court Action relies upon the fee-shifting provision in the LLC Agreement, which is quoted in its entirety as one of

---

[35] Indeed, at oral argument, Defendant's counsel acknowledged that the Management Agreement is a "related document" under Section 10.02 of the LLC Agreement. JOP Hr'g Tr. 29.

[36] Def's. Combined Opening & Answering Br. 34.

the first substantive factual paragraphs of the complaint in the Superior Court Action.

Second, Counts III, IV, VI, VII, VIII, IX, and X of the Superior Court Action complaint are not contract claims. For example, Counts III, VI, VII, IX, and X are claims for unjust enrichment.[37] Those claims are not claims for breach of the Management Agreement and, in some instances, may not relate to the services IRP provided under the Management Agreement. *See, e.g.*, Superior Court Action Compl., C.A. No. 2020-0890-PAF ¶¶ 107–15 (alleging that BEP has wrongfully refused to pay for or return furniture, fixtures, and equipment left at the office after the termination of the Management Agreement); *see also ID Biomedical Corp. v. TM Tech., Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) (observing that courts developed unjust enrichment as a theory of recovery to remedy the absence of a formal contract); *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *19 (Del. Ch. Sept. 18, 2014) ("[T]his Court routinely dismisses unjust enrichment claims that are premised on an 'express, enforceable contract that controls the parties' relationship' because damages is an available remedy at law for breach of contract.") (quoting *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 891 (Del. Ch.

---

[37] Count IV is a claim for "money had and received/restitution against Marino" and is asserted as an alternative to an unjust enrichment claim against Marino. Count VIII is a claim for conversion against BEP, which is not a contract claim. BEP is also not a party to the Management Agreement. *See* Compl., C.A. No. 2020-0890-PAF, at 23, 30.

23

2009)). Because the Company has asserted non-contract claims in the Superior Court Action, the Court cannot determine at this stage whether the Company's claims asserted against the defendants in that action (*i.e.*, Plaintiffs here) are exclusively governed by the Management Agreement. Instead, that "is a decision that must necessarily await the outcome" of the Superior Court Action. *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509 (Del. 2005).

### F.     Fees on Fees

Both sides in this action seek an award of their reasonable attorneys' fees and expenses in the event that they are the prevailing party on this motion under the terms of the LLC Agreement. Because I conclude that Plaintiffs are entitled to advancement, they are also entitled to their reasonable attorneys' fees and expenses. Plaintiffs are directed to file an application under Court of Chancery Rule 88 within 10 days of this Opinion.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that the LLC Agreement unambiguously provides that the Company must advance the reasonable attorneys' fees and expenses incurred by the Plaintiffs in defending the claims asserted in the Superior Court Action. Plaintiffs' motion for judgment on the pleadings is granted. Defendant's motion for judgment on the pleadings is denied.

**IT IS SO ORDERED.**

24