# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RUSHIKESH MANCHE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2025-1407-CDW |
| | ) | |
| MVMT LABS, INC., | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT RESOLVING CROSS-MOTIONS FOR SUMMARY <u>JUDGMENT ON ENTITLEMENT TO ADVANCEMENT</u>

Date Submitted: February 11, 2026
Date Decided: March 6, 2026

David J. Margules, Emily C. Friedman, BALLARD SPAHR LLP, Wilmington, Delaware; Terence M. Grugan, Matthew G. Kussmaul, BALLARD SPAHR LLP, Philadelphia, Pennsylvania; Rushmi Bhaskaran, BALLARD SPAHR LLP, New York, New York; Mark D. Wilding, Jr., THE RODMAN LAW GROUP, LLC, Denver, Colorado; *Counsel for Plaintiff Rushikesh Manche*

John A. Sensing, P. Andrew Smith, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Joanna R. Forster, CROWELL & MORING LLP, San Francisco, California; Mark D. Lee, CROWELL & MORING LLP, New York, New York; *Counsel for Defendant MVMT Labs, Inc.*

**WRIGHT, M.**

A corporation's co-founder and former director and officer seeks advancement from the corporation for fees and expenses incurred in connection with a federal investigation of the corporation regarding activities for which the corporation says the individual is responsible. The corporation asserts a laundry list of reasons why the individual is not entitled to advancement, including that the individual has not established that he was, is, or will be involved in the investigation and that the individual improperly initiated contact with the United States Attorney's Office conducting the investigation in order to create an advancement right that otherwise would not exist. After considering the parties' cross-motions for summary judgment, I conclude the corporation's position lacks merit and the individual is entitled to advancement.

## I.    FACTUAL BACKGROUND

The facts are drawn from the pleadings, facts not subject to reasonable dispute, the parties' submitted exhibits, and relevant public documents that are subject to judicial notice.

### A.    The Parties

Petitioner Rushikesh Manche is a co-founder of respondent MVMT Labs, Inc. He previously served as a director of MVMT, as well as its secretary, and chief financial officer.[1]

---

[1] *See* Verified Pet. for Advancement ("Pet."), Dkt. 1 ¶ 5; Resp't's Am. Answer to Verified Pet. for Advancement ("Am. Answer"), Dkt. 39 ¶ 5.

MVMT "is a technology development company that created the Movement Layer 2 blockchain, designed to scale the Ethereum blockchain environment using the Move programming language."[2]

**B.      Manche's Indemnification and Advancement Rights**

MVMT's Certificate of Incorporation grants indemnification rights to MVMT's current and former officers and directors.  Under Article VI, MVMT must "indemnify to the fullest extent permitted by law any person made or threatened to be made a party to an action or proceeding, whether criminal, civil, administrative, or investigative, by reason of the fact that such person is or was a director or officer of [MVMT]."[3]  Article VI further provides that "[n]either any amendment nor repeal of this Article VI, nor the adoption of any provision of [MVMT's] Certificate of Incorporation inconsistent with this Article VI, shall eliminate or reduce the effect of this Article VI in respect of any matter occurring, or any action or proceeding accruing or arising or that, but for this Article VI, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision."[4]  The Certificate of Incorporation does not grant Manche any right to advancement of fees.[5]

---

[2] Pet'r's Opening Br. in Supp. of Mot. for Summ. J. on Entitlement to Advancement ("POB"), Dkt. 40 at 2.

[3] Pet. Ex. A.

[4] *Id.*

[5] *See generally id.*

Manche also has indemnification and advancement rights under an agreement between MVMT and Manche executed on March 31, 2025.[6] Section 1 of the Indemnification Agreement states that "[MVMT] hereby agrees to hold harmless and indemnify [Manche] to the fullest extent permitted by law[.]"[7] Section 1(a), entitled "Proceedings Other Than Proceedings by or in the Right of the Company," states that Manche "shall be entitled to the rights of indemnification provided in this Section 1(a) if, by reason of his [] Corporate Status . . . [Manche] is, or is threatened to be made, a party to or participant in any Proceeding . . . , other than a Proceeding by or in the right of [MVMT]."[8]

Section 5 addresses Manche's advancement rights:

> Notwithstanding any other provision of this Agreement, [MVMT] shall advance all Expenses incurred by or on behalf of [Manche] in connection with any Proceeding by reason of [Manche]'s Corporate Status within thirty (30) days after the receipt by [MVMT] of a statement or statements from [Manche] requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding. . . .[9]

---

[6] Pet. Ex. B ("Indemnification Agreement").

[7] *Id.* § 1.

[8] *Id.* § 1(a).

[9] *Id.* § 5. Section 5's use of "shall advance" establishes that Section 5 is a mandatory advancement provision. *See, e.g.*, *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 206–207 (Del. 2005) ("In addition, Section 6.2 of Homestore's bylaws contains a mandatory advancement provision: '[t]he Corporation *shall pay* all expenses (including attorney's fees) incurred by such a director or officer in defending any such Proceeding as they are incurred in advance of its final disposition.'").

– 3 –

Section 5 also states that it these advancement rights "shall not apply to any claim made by [Manche] for which indemnity is excluded pursuant to <u>Section 9</u>."[10]  Section 9, in turn, addresses exceptions to Manche's right to indemnification and, by extension, advancement.  The relevant exception for this case is Section 9(c), which states that Manche is not entitled to indemnification or mandatory advancement

> except as provided in Section 7(e) of this Agreement, in connection with any Proceeding (or any part of any Proceeding) initiated by [Manche], including any Proceeding (or any part of any Proceeding) initiated by [Manche] against [MVMT] or its directors, officers, employees or other indemnitees, unless (i) the Board authorized the Proceeding (or any part of any Proceeding) prior to its initiation, (ii) such payment arises in connection with any mandatory counterclaim or cross claim brought or raised by [Manche] in any Proceeding (or any part of any Proceeding) or (iii) [MVMT] provides the indemnification, in its sole discretion, pursuant to the powers vested in [MVMT] under applicable law.[11]

Section 13 provides the definitions of terms used in the Indemnification Agreement.  Relevantly, it defines "Corporate Status" as "the status of a person who is or was a director, officer, employee, agent or fiduciary of [MVMT] or of any other corporation, partnership, joint venture, trust, employee benefit plan or

---

[10] *Id.*

[11] *Id.* § 9(c).

other enterprise that such person is or was serving at the request of [MVMT]."[12]

It defines "Proceeding" broadly:

> "Proceeding" includes any threatened, pending or completed action, suit, claim, counterclaim, cross claim, arbitration, mediation, alternate dispute resolution mechanism, investigation, inquiry, administrative hearing or any other actual, threatened or completed proceeding, whether brought by or in the right of [MVMT] or otherwise and whether civil, criminal, administrative or investigative, including any appeal therefrom, in which [Manche] was, is or will be involved as a party or otherwise, by reason of his or her Corporate Status, by reason of any action taken by him or her, or of any inaction on his or her part, while acting in his or her Corporate Status[.][13]

In sum, the Indemnification Agreement obligates MVMT to advance "all Expenses, incurred by or on behalf of [Manche] in connection with [any threatened, pending or completed . . . investigation, inquiry, . . . or any other actual, threatened or completed proceeding, . . . in which Manche was, is or will be involved as a party or otherwise] by reason of [Manche]'s [status as a director and officer of MVMT][.]"

---

[12] *Id.* § 13(a).

[13] *Id.* § 13(f).

**C.    The Formation of MVMT, Launch of the $MOVE Token, and Manche's Termination from MVMT**

MVMT was founded in 2023 by Manche and Cooper Scanlon.[14] Manche and Scanlon were MVMT's sole directors at the time.[15] In August 2024, MVMT's board of directors elected Manche as Secretary and Chief Financial Officer.[16] In September, the title of Secretary was transferred to MVMT's General Counsel.[17] In December, MVMT launched the $MOVE cryptocurrency token through the Movement Network Foundation and its subsidiary, Movement Limited.[18] Manche played a major role in the launch of the $MOVE token,[19] including engaging in market making activities.[20]

---

[14] Pet. ¶ 11; Am. Answer ¶ 11.

[15] Pet. ¶ 11; Am. Answer ¶ 11.

[16] Pet. ¶ 13; Am. Answer ¶ 13.

[17] Pet. ¶ 13; Am. Answer ¶ 13.

[18] Pet. ¶¶ 12, 14; Am. Answer ¶¶ 12, 14.

[19] Resp't's Opening Br. in Supp. of Mot. for J. on the Pleadings, or in the Alternative, Mot. for Summ. J. ("ROB"), Dkt. 41 at 8 ("In a prior action against MVMT, Manche admitted he was responsible for the $MOVE token launch.") (citing *Manche v. MVMT Labs, Inc.*, C.A. No. 2025-0790-PAF ("Prior Action"), Verified Am. Pet., Dkt. 31 ¶ 25); *see also* Verified Am. Pet., Transmittal Aff. of P. Andrew Smith in Supp. of Resp't MVMT Labs, Inc.'s Mot. for J. on the Pleadings, or in the Alternative, Mot. for Summ. J. ("Smith Aff."), Dkt. 41 Ex. 1 ("Prior Action Am. Pet.").

[20] Pet. ¶ 14; Am. Answer ¶ 14;

– 6 –

In March 2025, MVMT "completed a private stock placement to obtain funding" ("Placement").[21] MVMT executed various agreements on the day of the Placement,[22] including the Indemnification Agreement.[23]

Two weeks later, on April 13, Manche was asked to take a leave of absence from MVMT,[24] which Manche alleges was "due to negative media attention concerning [MVMT's] market making activities."[25] The negative media attention came into sharper focus on April 30, when cryptocurrency publication CoinDesk published an article alleging that Manche had engaged in potentially problematic market making activities in the lead up to the $MOVE token's launch.[26] The CoinDesk article was quickly followed on May 6 by MVMT's receipt of a grand jury subpoena ("Subpoena") from the United States Attorney's Office for the Northern District of California ("DOJ"),[27] concerning an investigation into the very same market making activities that were the

---

[21] ROB 9 (citing Prior Action Am. Pet. ¶ 1).

[22] *See* Aff. of Joseph Golding-Ochsner in Supp. of Resp't's Opening Br. in Supp. of Mot. for J. on the Pleadings, or in the Alternative, Mot. for Summ. J., Dkt. 41 ¶ 4.

[23] *See id.* ¶ 6.

[24] Pet. ¶ 15; Am. Answer ¶ 15.

[25] Pet. ¶ 15.

[26] *Id.*; Am. Answer ¶ 15; *see also* Sam Kessler, *Inside Movement's Token-Dump Scandal: Secret Contracts, Shadow Advisers and Hidden Middlemen*, COINDESK (Apr. 30, 2025), https://www.coindesk.com/tech/2025/04/30/inside-movement-s-token-dump-scandal-secret-contracts-shadow-advisors-and-hidden-middlemen, Pet. Ex. C.

[27] Pet. ¶¶ 1, 16; Am. Answer ¶¶ 1, 16.

subject of the negative media attention and for which MVMT asserted in this court, under oath, that Manche was responsible.[28] Scanlon and another individual, acting as the Executive Committee of MVMT's Board of Directors, terminated Manche as a director and officer that same day.[29] The Subpoena was a factor considered by the Executive Committee when it terminated Manche.[30] MVMT did not, at that time, tell Manche about the Subpoena.[31]

## D. Manche Initiates a Section 225 Proceeding

On July 9, Manche filed the Prior Action to challenge his removal as an officer and director of MVMT.[32] He filed the Prior Action Amended Petition on July 28, continuing to contest his removal as an officer and director.[33] Among other things, the Prior Action Amended Petition alleges that, on March 31, 2025, MVMT "executed a stock purchase agreement ('SPA'), . . . to issue Series B Convertible Preferred Stock to various private investors."[34] The Prior Action Amended Petition alleges that, with the SPA, "the parties to the Placement simultaneously adopted numerous other documents, each an integral

---

[28] Pet. ¶ 16, Ex. D at 23.

[29] Pet. Ex. D at 21.

[30] *Id.* at 10.

[31] Pet. ¶ 16; Am. Answer ¶ 16.

[32] *See* Prior Action, Verified Pet., Dkt. 1.

[33] Prior Action Am. Pet. at 1.

[34] *Id.* ¶ 23.

part of the Placement[.]"[35] These "other documents" were alleged to include: (1) Co-Founder Agreements; (2) an Amended and Restated Certificate of Incorporation; and (3) a Voting Agreement.[36]

The Prior Action Amended Petition alleges that, on April 30, MVMT's president and one other director of MVMT "passed a resolution to rescind the Placement."[37] The rescission was allegedly executed on May 5.[38] The Prior Action Amended Petition alleges that the rescission of the Placement "also rescinded or voided the integral agreements executed in connection with it."[39] The Prior Action Amended Petition further argues that the alleged rescission scheme was void.[40] For relief, the Prior Action Amended Petition sought, among other things, invalidation of "all acts of [MVMT's] improperly constituted Board and Executive Committee after April 30, 2025" and invalidation of "all acts of MVMT's stockholders relying upon improper votes[.]"[41]

---

[35] *Id.* ¶ 24.

[36] *See id.*

[37] *Id.* ¶ 32.

[38] *Id.* ¶ 33.

[39] *Id.* ¶ 32.

[40] *Id.* ¶ 50.

[41] *Id.* at 19.

## E. Manche Learns of the Subpoena and Investigation

Manche and MVMT engaged in discovery during the Prior Action. Manche issued discovery seeking, among other things, identification of any and all bases for Manche's removal and termination and all documents relating to "[a]ny internal or third-party investigation concerning [MVMT] or its officers or directors."[42] In its initial responses to the discovery, MVMT did not disclose the Subpoena's existence or identify it as a factor in Manche's termination.[43]

MVMT finally disclosed the existence of the Subpoena and Investigation on September 15.[44] On September 16, MVMT's counsel wrote to Manche's counsel to ask whether Manche "intends to testify substantively or invoke his 5th Amdt. right in response to questions" in the Prior Action.[45] MVMT's counsel further stated that they "intend to produce all public filings [in the Prior Action] to the Government."[46] On September 18, MVMT's counsel produced the Subpoena to Manche.[47]

---

[42] Transmittal Aff. of Emily Friedman, Esq. in Supp. of Pet'r's Mot. for Summ. J ("Friedman Aff."), Dkt. 40 Ex. A at 13.

[43] *Id.* Ex. B at 23.

[44] *See* ROB 15–16.

[45] Email from Joanna Forster to Terrence M. Grugan, et al. (Sept. 16, 2025), Friedman Aff. Ex. C.

[46] *Id.*

[47] Decl. Pursuant to 10 *Del. C.* § 5351 *et seq.* of Rushmi Bhaskaran in Supp. of Pet'r's Mot. for Summ. J. on Entitlement of Advancement ("Bhaskaran Decl."), Dkt. 40 ¶ 4.

On September 19, MVMT, in response to an interrogatory request, characterized the Investigation as "concerning market making matters for which Petitioner was responsible."[48]  Next, on September 23, in a motion to compel, MVMT asserted that Manche's alleged actions "also raise concerns of wire fraud," and stated that "whether [Manche]'s conduct constitutes insider trading of the MOVE token . . . is for governmental authorities to decide."[49]  Finally, on September 30, MVMT's counsel noted that they had previously offered "to speak to white collar partners from Ballard, . . . with whom [Manche's counsel] could speak to consider the risks facing [Manche]."[50]

## F.    Manche's Counsel Contacts the DOJ

Manche's counsel took the foregoing assertions to mean "that Manche had criminal exposure in the Investigation based on his conduct as an officer at MVMT."[51]  On October 6, Manche's counsel "spoke with AUSA [Benjamin] Kleinman[,]" the Assistant United States Attorney that signed the Subpoena.[52]  Manche's counsel declares that "the purpose of [her] outreach was to gather facts in order to advise Manche on whether he should invoke his Fifth

---

[48] Pet. Ex. D at 23.

[49] Friedman Aff. Ex. D at 13 n.3.

[50] Pet. Ex. E at 4.

[51] Bhaskaran Decl. ¶ 3.

[52] *Id.* ¶¶ 4–5.

Amendment rights in the Prior Action in light of the Investigation[.]"[53] AUSA Kleinman offered a proffer agreement in exchange for Manche's interview.[54] Manche has not agreed or rejected the interview request; his criminal counsel is "advising Manche on whether he should move forward with the . . . request[.]"[55]

## G.   Manche Requests and is Denied Advancement

On October 24, "Manche demanded advancement for fees he was incurring with regard to the Subpoena and Investigation[.]"[56] MVMT denied Manche's advancement demand on November 24.[57]

## II.   PROCEDURAL POSTURE

On December 3, Manche filed the Petition.[58] On December 19, MVMT filed its answer.[59] On January 9, 2026, MVMT filed its amended answer.[60] The parties agreed, and the court ordered, that they would present the issue of Manche's entitlement to advancement by way of cross-motions for summary

---

[53] *Id.* ¶ 3.

[54] *See id.* ¶ 6 & n.1.

[55] *Id.* ¶ 6.

[56] POB 8–9 (citing Pet. ¶¶ 18–19).

[57] *Id*. at 9 (citing Pet. ¶ 22).

[58] Dkt. 1.

[59] Dkt. 25.

[60] Dkt. 39.

judgment.[61]  Briefing on the cross-motions closed on January 20.  On February 11, the court held oral argument on the cross-motions and took the matter under advisement.

## III.   ANALYSIS

The standard of review on cross-motions for summary judgment is clear. Where, as here, "the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions." *Kezirian v. World Coll. of Refractive Surgery & Visual Sciences PBC*, 2026 WL 412640, at *4 (Del. Ch. Feb. 13, 2026) (quoting Ct. Ch. R. 56(h)).  "Advancement cases are particularly appropriate for resolution on a paper record, as they principally involve the question of whether claims pled in a complaint against a party . . . trigger a right to advancement under the terms of the corporate instrument." *Int'l Rail P'rs LLC v. Am. Rail P'rs, LLC*, 2020 WL 6882105, at *2 (Del. Ch. Nov. 24, 2020)

---

[61] *See* Dkt. 21 ¶¶ 1(b) (providing for "simultaneous cross-motions for summary judgment"); 1(c) (providing for "simultaneous oppositions to summary judgment motions").  Despite the agreement and order, MVMT styled its motion as a "Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment." *See* Dkt. 41.  I hold MVMT to its agreement and treat MVMT's motion solely as one for summary judgment.  *See Craig v. Graphic Arts Studio, Inc.*, 166 A.2d 444, 448 (Del. Ch. 1960) ("The court-approved stipulation and agreement of

(quoting *DeLucca v. KKAT Mgmt., LLC*, 2006 WL 224058, at \*2 (Del. Ch. Jan. 23, 2006)).

Before I address Manche's entitlement to advancement, I address MVMT's argument that Manche should be judicially estopped from claiming advancement under the Indemnification Agreement.

## A. Manche is Not Estopped from Seeking Advancement

MVMT argues that Manche should be judicially estopped from asserting entitlement to advancement under the Indemnification Agreement. MVMT asserts that "just a few months ago Manche successfully induced the [c]ourt in the [Prior] Action to adopt a judicial ruling based on Manche's argument that all of the . . . Placement agreements, which includes the Indemnification Agreement . . . , were rescinded."[62] MVMT says this earlier argument was "central to—indeed, necessary to—[Manche's] claim that he had been improperly terminated."[63] MVMT argues that "Manche cannot now claim that a single agreement entered into as part of the . . . Placement magically survived simply because it provides him with a financial lifeline."[64]

---

January 22, 1960, signed by all the then parties, including defendants' then counsel, fixed the rights of such parties.").

[62] ROB 51–52.

[63] *Id*. at 53.

[64] *Id*. at 54.

In opposition, Manche says he "did not contend the Indemnification Agreement was rescinded," and that he only argued in the Prior Action that "other" agreements were rescinded.[65]  Manche argues that even if there is an arguable inconsistency (which he denies), "[d]oubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits."[66]  Manche also argues that MVMT failed to identify "any way in which a supposed inconsistency creates an 'unfair advantage' for Manche."[67]

Judicial estoppel is an "extraordinary"[68] and narrowly contoured doctrine.  *Lynch v. Gonzalez*, 2020 WL 4381604, at \*43 (Del. Ch. July 31, 2020).  It "is designed 'to protect the integrity of the judicial proceedings.'"  *Flagler Hldgs. VI Beta, Inc. v. Airline Accommodations Sols., LLC*, 2023 WL 9053669, at \*4 (Del. Ch. Dec. 19, 2023) (quoting *Motorola Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859 (Del. 2008)).  As this court explained in *Lynch*, the doctrine of judicial estoppel requires the asserting party to establish six elements:

---

[65] *See* Pet'r's Answering Br. in Opp. to Resp't's Mot. for J. on the Pleadings, or in the Alternative, Mot. for Summ. J. ("PAB"), Dkt. 59 at 11–12.

[66] PAB 11 (quoting *MHS Cap. LLC v. Goggin*, 2018 WL 2149718, at \*6 (May 10, 2018)).

[67] *Id*. at 12.

[68] *Chandler v. Bayhealth Med. Ctr., Inc.*, 2024 WL 4977010, at \*11 (Del. Super. Dec. 4, 2024) (citations omitted).

(1) the inconsistent position must have been successfully maintained when first asserted; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and issues must be identical; (5) the party claiming estoppel must have been misled and changed his position; and (6) it must appear to the court unjust for one party to permit the other to change its position.

2020 WL 4381604, at *42 (citing DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE & COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 15.02[d] (2d ed. 2018)).

"[A]n estoppel analysis requires a careful and literal reading of the arguments and decisions in the earlier matter." *Sheldon v. Pinto Tech. Ventures, L.P.*, 2019 WL 336985, at *6 (Del. Ch. Jan. 25, 2019). "Doubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits." *MHS Cap. LLC v. Goggin*, 2018 WL 2149718, at *6 (May 10, 2018). MVMT's request to apply judicial estoppel is rejected because MVMT failed to establish the third, fourth, and fifth elements.

### 1. Manche's Argument in This Action Is Not Clearly Inconsistent with His Arguments in the Prior Action

The extraordinary application of judicial estoppel is not warranted here because Manche's desired enforcement of the Indemnification Agreement is not "clearly inconsistent" with his earlier argument that certain agreements

were rescinded. I begin with an examination of the arguments in the Prior Action and the decision at issue.

In the Prior Action Amended Petition, Manche alleged that, in connection with the Stock Purchase Agreement, "the parties to the Placement simultaneously adopted numerous other documents[.]"[69] The Prior Action Amended Petition, as in the original petition in the Prior Action, specifically refers to the following documents as "an integral part of the Placement":

> a. Co-Founder Agreements. Manche and Scanlon each executed a Co-Founder Agreement purporting to terminate the CSPAs executed in 2023 and provide MVMT the option to repurchase unvested shares on the termination of their services, without any distinction related to Cause . . . .
>
> b. Amended and Restated Certificate of Incorporation ("Amended Certificate"). MVMT filed an Amended Certificate with the Delaware Secretary of State creating the Series B Preferred Stock and defining the rights and preferences of its holders.
>
> c. Voting Agreement. Manche, Scanlon and each Series B investor executed a Voting Agreement that, together with the Amended Certificate, restructured MVMT's Board and the mechanisms for director elections. . . . [Investors], respectively committed to invest . . . in the . . . Placement.[70]

---

[69] Prior Action Am. Pet. ¶ 24.

[70] *Id.*

– 17 –

Manche alleged in the Prior Action that Scanlon and another director "passed a resolution to rescind the Placement[.]"[71]  Manche argued that the resolution "also rescinded the integral agreements executed in connection with it."[72]

Manche filed motions for expedited proceedings and for a status quo order with his original petition.[73]  Manche filed one opening brief in support of both motions.[74]  In that brief, Manche alleged that "[o]n April 30, 2025, MVMT rescinded the Placement and its associated component agreements[.]"[75]  The brief makes no reference to a rescission of the Indemnification Agreement. Instead, Manche argued that "the voiding of the Placement rescinded all the component agreements[.]"[76]  Manche further argued that the rescission was of "the Placement and all agreements integral to it, including the SPA, Voting Agreement and Co-Founder Agreements."[77]  In sum, Manche did not clearly argue that every single agreement executed by the parties, including the Indemnification Agreement, was rescinded.  Manche instead raised specific

---

[71] *Id.* ¶ 32.

[72] *Id.*

[73] Prior Action, Mot. for Expedited Proceedings, Dkt. 1; Mot. for Status Quo Order, Dkt. 1.

[74] Opening Br. in Supp. of Mots. for Status Quo Order and Expedited Proceedings, Smith Aff. Ex. 2 ("Prior Action OB").

[75] *Id*. at 3–4.

[76] *Id*. at 5.

[77] *Id*. at 11.

agreements that he alleged were "components of" and "integral to" the Placement were rescinded.

This reading is consistent with Manche's reply brief he filed in support of the motions to expedite and for a status quo order in the Prior Action. There, Manche pointed to a resolution that authorized the rescission scheme. Manche noted that the resolution specifically listed the "Rescinded Agreements" and that the resolution "directed cancellation of [MVMT's] Amended Certificate[.]"[78]

The authorizing resolution which Manche cites indeed defines "Rescinded Agreements," and the Indemnification Agreement is not included in the definition.[79] The authorizing resolution specifically states that the rescission scheme will not "terminate, limit or modify any agreement entered into by [MVMT], including in connection with the Series B financing, except for the Rescinded Agreements (such agreements not being terminated, limited or modified to include *the Indemnification Agreements with [MVMT]'s directors and officers* and the Co-Founder Agreements)."[80]

---

[78] Prior Action, Pet'r's Reply Br. in Supp. of Mots. For Status Quo Order and Expedited Proceedings ("Prior Action Reply"), Dkt. 11 at 4.

[79] *See* Prior Action Am. Pet. Ex. N at 5.

[80] *Id.* at 6 (emphasis added).

Although Manche argued the Co-Founder Agreement was rescinded, he qualified the argument by the fact that the Co-Founder Agreement states that its entry "is a condition of the Series B financing[.]"[81] Manche did not extend this qualification to the Indemnification Agreement or argue that the Indemnification Agreement was one of the rescinded documents he considered integral to the Placement.

At oral argument on the motions, Manche again raised the rescission of the three, specific agreements.[82] He stated that he "would never had made *these* agreements and he never would have taken *these* actions without the corresponding investment[.]"[83] Manche focused his rescission argument on the point that MVMT "nevertheless attempted to deviate from the law, leave in place, certain provisions and agreements, necessarily a part of the rescinded transaction, that would enable them *to achieve their purpose of ousting Mr. Manche, and rewrite the agreements that Mr. Manche* entered to foist onto him

---

[81] Telephonic Oral Args. and Rulings of the Ct. on Pet'r's Mots. for Status Quo Order and Expedited Proceedings ("Prior Action Tr."), Smith Aff. Ex. 3 at 14 (TRANSCRIPT); *see also id.* at 15 ("And in the absence of the Placement, Mr. Manche's co-founder agreement is void because it was a condition of the Placement.").

[82] *See id*. at 7–8.

[83] *Id*. at 9 (emphasis added).

all of the detriments of *those agreements* while . . . all the benefit had been removed."[84]

MVMT argues that, by maintaining the Placement was rescinded, Manche is necessarily arguing that every agreement signed on the day of the Placement was rescinded.[85] But reading Manche's words literally and carefully, it is not clear that is the only possible interpretation. Manche consistently raised the rescission of specific agreements between the parties.[86] Given the literal nature of an estoppel review, I decline to extend the logic of Manche's past arguments to ends he did not explicitly contemplate or argue. *See Sheldon v. Pinto Tech. Ventures, L.P.*, 2019 WL 336985, at *6 (Del. Ch. Jan. 25, 2019).

Reading the relevant papers literally and carefully, I cannot conclude Manche's argument in this action—*i.e.*, that he is entitled to advancement under the Indemnification Agreement—is clearly inconsistent with his argument in the Prior Action that certain "integral" documents, which he consistently asserts

---

[84] *Id*. at 12 (emphasis added).

[85] *See* ROB 54.

[86] *See* Prior Action Am. Pet. ¶¶ 24, 32; Prior Action OB 11; *see also* Prior Action Reply 4 (stating "each of the Co-Founder Agreements, SPA, Voting Agreement and Amended Certificate was executed as part of the later-voided Placement"); Prior Action Tr. 5–6 ("With the active intention of rescinding the Placement in its entirety, MVMT kind of created for itself sort of a convenient legal paradox where it attempted to take and then reaffirm actions with the sole and express purpose of

were the (1) Co-Founder Agreements; (2) Voting Agreement; and (3) Amended and Restated Certificate of Incorporation, were rescinded with the Placement.[87] Accordingly, judicial estoppel is not warranted here. *See MHS Cap. LLC*, 2018 WL 2149718, at *6 (quoting 18B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 4477 (2d ed. 2018)).

### 2. The Issues in this Action and the Prior Action are Not Identical

Estoppel is also inappropriate because the issues in this action and the Prior Action are not identical. The issue here is whether Manche is entitled to advancement under the Indemnification Agreement for fees incurred in connection with the Investigation. The issues in the Prior Action were whether Manche was rightfully removed as a director of MVMT and whether the actions MVMT took *after* the Placement were valid.[88] Because these issues are not remotely the same, judicial estoppel is not warranted.

### 3. MVMT Changed No Position in Reliance on Manche's Arguments In this Action

Finally, judicial estoppel does not apply because MVMT changed no position it took in the Prior Action in response to Manche's arguments here.

---

ousting Mr. Manche under authority of the very agreements it was imminently rescinding.").

[87] *See also* PRB 11 (noting "the Court granted the *Status Quo* Order having found a colorable claim that the alleged rescission of *other* agreements robbed the Board of power to remove and fire Manche.").

Manche argues here that the Indemnification Agreement is enforceable. In the Prior Action, MVMT argued that not all agreements executed by the parties were rescinded when it executed the rescission scheme.

At oral argument on the Prior Action's previously addressed motions, for example, MVMT's counsel asserted that Manche had not "suggested any legal reason why the company can't rescind some agreements and not others, and I'm not aware of any."[89] And here, MVMT has not argued that the Indemnification Agreement is unenforceable or was rescinded. MVMT accordingly failed to establish this element.

In sum, MVMT failed to establish all six elements necessary to warrant application of judicial estoppel. Manche is, therefore, not estopped from relying on the Indemnification Agreement to argue his entitlement to advancement.

## B. Manche is Entitled to Advancement Under the Indemnification Agreement

I turn now to the question of Manche's entitlement to advancement under the Indemnification Agreement. The Indemnification Agreement provides for mandatory advancement and employs the "by reason of" standard to evaluate a

---

[88] *See* Prior Action Am. Pet. at 18–19.

[89] Prior Action Tr. 25.

claim for advancement.[90]  The "by reason of" standard "is satisfied when 'a nexus or causal connection' exists between the underlying proceeding and the official's 'corporate capacity.'"  *Krauss v. 180 Life Scis. Corp.*, 2022 WL 665323, at *4 (Del. Ch. Mar. 7, 2022) (quoting *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 213 (Del. 2005)).  "This court construes such provisions broadly to effectuate Delaware's policy of providing temporary relief from substantial expenses." *Id.* (citing *Brown v. LiveOps, Inc.*, 903 A.2d 324, 327–28 (Del. Ch. 2006)).  The "by reason of" standard "has been interpreted to include proceedings brought against an official for wrongdoing allegedly 'committed in [his] official capacity,' and 'in the course of performing [his] day-to-day . . . duties.'" *Id.* (quoting *Imbert v. LCM Int. Hldg. LCC*, 2013 WL 1934563, at *5 (Del. Ch. May 7, 2013)).

I start by noting briefly that MVMT does not seriously dispute that any connection Manche has with the Investigation arises by reason of his corporate status.[91]  Indeed, the record clearly establishes that Manche's involvement with the Investigation arose by reason of his corporate status.  MVMT acknowledges

---

[90] *See* Indemnification Agreement § 5.

[91] MVMT did not argue in its opening brief that Manche is not involved in the Investigation by reason of his corporate status.  In its answering brief, MVMT argues weakly that "[n]othing in the record supports" a determination that Manche is involved in the Investigation by reason of his corporate status.  *See* Resp't's Br. in Opp. to Pet'r's Mot. for Summ. J. ("RAB"), Dkt. 54 at 38 n.20.  The record clearly rebuts this.  *See, e.g.*, Pet. Exs. D at 23, E at 4; Friedman Aff. Exs. C, D at 13 n.3.

that the Investigation concerns MVMT's actions that were directed by Manche, and that Manche's actions at MVMT implicate him in the Investigation.[92]

MVMT advances four arguments against Manche's entitlement to advancement: (1) Manche has not shown that he is, or is threatened to be made, "a party or participant to a Proceeding";[93] (2) Manche "initiated" his participation, if any, in the Investigation;[94] (3) Manche "violated the Confidentiality Order in the 225 Action" in relying on MVMT's counsel's disclosure of the Subpoena and Investigation;[95] and (4) Manche "failed to meet his obligations under the Indemnification Agreement" to provide MVMT "with notice pursuant to Section 16" of the Indemnification Agreement.[96] I address each argument in turn.

---

[92] *See, e.g.*, Pet. Ex. D at 23 (noting MVMT's "receipt of a grand jury subpoena on May 6, 2025 from the U.S. Department of Justice, concerning market making matters for which Petitioner was responsible"); Am. Answer ¶ 14 ("Respondent admits that Petitioner was involved in market making activities[.]").

[93] ROB 33.

[94] *See id*. at 39–40 n.17.

[95] *Id*. at 46.

[96] *Id*. at 49. MVMT also argues that its Certificate of Incorporation does not entitle Manche to advancement. *See id*. at 40–41. Manche does not dispute this argument. *See* PRB 6 n.2 (agreeing that "the Certificate of Incorporation doesn't provide for advancement").

### 1.     Manche Is or Will Be Involved in the Investigation by Reason of His Corporate Status

MVMT's first argument is that Manche has not shown that he is, or is threatened to be made, "a party or participant to a Proceeding" because "he has not alleged that he actually 'was, is or will be' involved in the [Investigation]."[97]  MVMT focuses intently on Manche's use of a particular word in the Petition—"may"—and asserts that this use is "a critical, and fatal, concession" that Manche is not entitled to advancement "because 'may' is found nowhere in the Indemnification Agreement."[98]  In short, MVMT argues, the Investigation is not a "Proceeding" under Section 13(f) of the Indemnification Agreement, and thus does not trigger advancement under Section 5, because Manche has not shown he "was, is, or will be involved" and instead has only "a speculative and generalized fear . . . based on his speculative and inchoate belief alone that he may be implicated some day in the future in the Investigation."[99]

There are two responses to this argument.  The first is that MVMT's focus on a single word in the Petition ignores that the parties agreed to present cross-motions for summary judgment, not motions for judgment on the

---

[97] ROB 34.

[98] *Id*. at 34–35.

[99] *Id*. at 39.

pleadings, so the court is not relegated to the four corners of the pleadings in evaluating Mache's entitlement to advancement. *See, e.g.*, Ct. Ch. R. 56(c). Under Rule 56, I must review "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits," and all attached, "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit" to determine whether a genuine dispute of fact exists as to whether Manche "was, is, or will be involved" in the Investigation "as a party or otherwise[.]"[100]

The second point is that MVMT misconstrues the definition of "Proceeding" in Section 13(f) of the Indemnification Agreement. The language is broad. Manche need not be a party to the Investigation in order to be entitled to advancement, as long as he "was, is, or will be involved" in some capacity ("or otherwise").[101] No doubt recognizing this, MVMT focuses its attention on

---

[100] Ct. Ch. R. 56(c), (e); Indemnification Agreement § 13(f).

[101] The Indemnification Agreement does not define the word "otherwise." Merriam-Webster defines the word to mean "something *or anything else*" or "something to the contrary." *See Otherwise*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/otherwise (emphasis added); *see also Otherwise*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "otherwise" to include "[i]n a different way; in another manner" and "[i]n other conditions or circumstances"). Used here, "anything else" denotes a broad variety of potential capacities. "Something to the contrary" of being a party to the Investigation could mean a variety of possible non-party capacities, such as a witness or even a likely witness. Accordingly, the use of "otherwise" indicates that Manche's covered capacity is broadly defined. *Cf. Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 343 (Del. 1983) (interpreting the same language and finding "'Party' as used here, refers to either the plaintiff *or* the

the phrase "was, is, or will be involved" and argues that it requires a level of certainty that the record in this case, centered on the Petition's use of "may," does not reach.[102] But "will be" need not convey certainty; often it is a statement of anticipation or expectation.[103] MVMT offers no argument, let alone evidence, to suggest that the Indemnification Agreement's use of "will be" was intended in a restrictive, certainty-only sense.[104] So the question Section 13(f)'s use of "will be" presents is not whether it is certain that Manche will be involved in the Investigation in some way, but whether it is anticipated or expected that such involvement will occur.

Understood that way, the record here establishes that Manche could reasonably anticipate or expect involvement in the Investigation, even before

---

defendant in a lawsuit, and the entire phrase *is broad enough* to include an individual who acts as an intervenor or *amicus curiae* in any particular case.") (emphasis added).

[102] ROB 2 ("Each of these terms is definitive.").

[103] In other words, the modal verb "will" combined with the bare infinitive "be" can be used both to state future facts and to express expectations or predictions. For example: "The United States will be 250 years old on July 4 this year" is a statement of what is certain to happen in the future, while "They will be home by 9 p.m." is a statement of what someone expects to happen.

[104] Indeed, the Indemnification Agreement establishes the parties intended for it to be interpreted as broadly as is lawful. *See* Indemnification Agreement §§ 6 ("It is the intent of this [Indemnification] Agreement to secure for [Manche] rights of indemnity that are as favorable as may be permitted under the DGCL and public policy of the State of Delaware."); 14 ("[T]his [Indemnification] Agreement is intended to confer upon [Manche] indemnification rights to the fullest extent permitted by applicable laws."). Variations of "to the fullest extent" appear four other times in the Indemnification Agreement. *See* Indemnification Agreement at 1 (fifth whereas clause); §§ 1, 3(d), 7(e).

the contact between his counsel and AUSA Kleinman. There is no dispute that the Investigation and the Subpoena arising from it relate to the very same market making activities for which MVMT asserted in this court, under oath, Manche bears responsibility.[105] There is no dispute that MVMT terminated Manche in part because of the Investigation and the Subpoena arising from it.[106] There is no dispute that MVMT has suggested Manche may have committed crimes while a director and officer of MVMT in connection with these activities.[107] There is no dispute that Manche possibly invoking his Fifth Amendment right against self-incrimination relating to the subject matter of the Investigation came up in discussions between counsel. And, finally, there is no dispute MVMT thought it important to send all public filings in the Prior Action to the DOJ.[108] In short, MVMT has consistently signaled Manche's

---

[105] *See, e.g.*, Pet. Ex. D at 23 (stating the Subpoena concerns "market making matters for which [Manche] was responsible").

[106] *See id.* (stating that Manche's termination was precipitated, in part, by MVMT's "receipt of a grand jury subpoena on May 6, 2025 from the U.S. Department of Justice, concerning market making matters for which [Manche] was responsible").

[107] *See* Friedman Aff. Ex. D at 13 n.3 ("Whether [Manche]'s conduct constitutes insider trading in the $MOVE token under a wire fraud theory is for governmental authorities to decide.") (citation omitted).

[108] *See* Email from Joanna Forster to Terrence M. Grugan, et al. (Sept. 16, 2025), Friedman Aff. Ex. C (MVMT's counsel asking whether Manche "intends to testify substantively or invoke his 5th Amdt. right in response to questions" and noting that MVMT "intend[s] to produce all public filings to the Government"). This is not to suggest that MVMT was doing anything improper in forwarding these public filings, but it shows that MVMT thought that things Manche was arguing or doing in the

importance to the Investigation and the Subpoena and shown that Manche has more than a "speculative and generalized fear" as MVMT claims. Under these circumstances, I have no trouble finding that Manche "was, is, or will be involved" in the Investigation by reason of his Corporate Status.[109]

MVMT argued at the hearing on Manche's entitlement that its statements alone cannot create the threatened involvement in a proceeding that would allow for advancement of Manche's fees.[110] MVMT points to *Baker v. Impact Holding, Inc.*,[111] as well as other cases discussed below, for the proposition that "only the government" can create the threatened involvement.[112] But that is not what *Baker* held.

---

Prior Action were relevant to the Investigation or would otherwise be of interest to the DOJ.

[109] *See, e.g.*, *Pulier v. CSC Agility Platform, Inc.*, C.A. No. 2017-0081-AGB, at 15–16 (Del. Ch. Aug. 7, 2017) (TRANSCRIPT) ("[T]he actions that were filed by the U.S. and Australian authorities all focused on the alleged earnout bribery scheme where Pulier was a principal. Thus, although Pulier was not named as a party to those actions, it is reasonable to assume under the circumstances that he is threatened to be made a party to those proceedings or like proceedings."); *i/mx Info. Mgmt. Sols., Inc. v. Multiplan, Inc.*, 2014 WL 1255944 (Del. Ch. Mar. 27, 2014) ("The Merriam-Webster Dictionary defines 'threaten' as 'to utter threats against,' 'to give signs of warning of,' or 'to announce as intended or possible.' . . . Thus, the relevant inquiry in this case is whether QMC 'gave signs or warnings' to Multiplan that it was going to commence an Action regarding the Kaiser issue or announced to Multiplan that it intended to, or that it was possible that it would, commence an Action regarding the Kaiser issue.").

[110] *See* Tr. of Oral Arg. and Report of the Magistrate on Pet'r's Mot. to Seal the Courtroom and Oral Arg. on Cross-Mots. for Summ. J. ("Tr."), Dkt. 74 at 53.

[111] 2010 WL 2979050 (Del. Ch. July 30, 2010).

[112] *See* Tr. 53.

In *Baker*, the court dismissed a petition seeking enforcement of advancement rights under Court of Chancery Rule 12(b)(6) where the plaintiff filed an affirmative action against the entity defendant, and where the plaintiff did "not adequately allege[] that he brought that [a]ction in defense of a claim by" the defendant-entity or another entity. *Baker*, 2010 WL 2979050, at *9.

The agreement governing the plaintiff's advancement rights provided mandatory advancement "for any director 'who was, is, or is threatened to be made *a party* to a proceeding' by reason of her status as a director." *Id*. at *2 (emphasis added). The agreement defined "Proceeding" as "any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, arbitrative, or investigative, any appeal in such an action, suit, or proceeding, [or] any inquiry or investigation that could to such an action, suit, or proceeding." *Id.* The agreement expressly stated, however, that the plaintiff's right to advancement was for expenses incurred in defending a proceeding. *Id.*

The plaintiff sought advancement for multiple underlying proceedings—all of which were affirmative actions against the defendant. *See id.* at *1. Preceding these actions was a financial audit the defendant initiated that purportedly led to an investigation into the plaintiff and his performance "as an officer and director" of the defendant and another, related entity. *Id.* The defendant moved to dismiss the plaintiff's petition under Rule 12(b)(6).

The plaintiff argued that he was due advancement for his affirmative actions because they were initiated in defense of the investigation's findings. *See id.* at *3. He argued that the petition adequately pleaded that the "investigation of [his] conduct constitutes a 'proceeding' under the expansive definition in the [agreement] because" the defendant used the investigation in support of its counterclaims against the plaintiff and based the plaintiff's removal as director on the investigation. *Id.*

The court found it reasonably conceivable that the investigation was a covered proceeding because of the governing agreement's broad definition of "Proceeding." *See id.* at *5–6. Thus, even though the investigation "appear[ed] to be primarily an audit of [an entity's] financial records[,]" the court found it conceivable "that the financial audit of [the entity] could constitute an 'inquiry . . . that could lead to such an action, suit, or proceeding' against [the plaintiff], including a possible further investigation specifically into his conduct as a director." *Id.* at *6.

The court made no reference to a requirement that the investigating party directly name or affirmatively contact an individual for that individual's involvement in the proceeding to be covered. Instead, the court dismissed the plaintiff's petition because the actions the plaintiff sought advancement for were affirmative actions against the defendant, which was excluded by the governing agreement. *Id.* at *9. *Baker*, accordingly, does not support

– 32 –

MVMT's argument that an investigation or inquiry is a covered proceeding only if the investigating party directly contacts the party seeking advancement.[113]

### 2. Neither *Mooney* Nor *Donahue* Nor *Weil* Compels a Different Conclusion Regarding Manche's Entitlement to Advancement

MVMT relies heavily on three cases to support its argument that Manche has only "a speculative and generalized fear . . . based on his speculative and inchoate belief alone that he may be implicated some day in the future in the Investigation."[114]  None of them supports MVMT's case.

The first case is this court's decision in *Mooney v. Echo Therapeutics*.[115] MVMT argues that, "[a]s in *Mooney*, the Petition does not allege that Manche is required to do anything in connection with the Subpoena or the Investigation, and he thus has no claim to advancement."[116]  In *Mooney*, this court denied advancement of fees the plaintiff incurred in connection with the plaintiff's

---

[113] Indeed, this court has found that a party's involvement in a proceeding is considered threatened even where the party was "not served personally with subpoenas" until months after the subpoenas were first served. *White v. Curo Tex. Hldgs., LLC*, 2017 WL 1369332, at \*7 (Del. Ch. Feb. 21, 2017) ("Curo Holdings complains that White and Kumar's attorneys reviewed documents that were responsive to subpoenas served on White and Kumar's entities, even though White and Kumar were not served personally with subpoenas until months later.  This was entirely reasonable, as the subpoenas obviously threatened White and Kumar with an investigation.").

[114] ROB 39.

[115] 2015 WL 3413272 (Del. Ch. May 28, 2015).

self-initiated contact with FINRA. Under the defendant's bylaws, the plaintiff was entitled to advancement for claims where he "was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding[.]" *Mooney*, 2015 WL 3413272, at *3. The relevant underlying proceeding in *Mooney* was a FINRA investigation into the defendant. *Id.* at *1, *4. Believing without support that he had been implicated in the FINRA investigation, the plaintiff "attempted to involve himself in the investigation."[117] The court held that, despite the plaintiff's self-initiated involvement, no evidence supported a finding that the plaintiff "is a party or has been threatened to be made a party to the FINRA Investigation." *Id.* at *4.

*Mooney* does not control here. Section 5 of the Indemnification Agreement does not require Manche to be a "party" or a "threatened party."[118] The Indemnification Agreement here provides a broader variety of covered capacities than the bylaws in *Mooney*.[119] To further distinguish *Mooney* from this case, Manche's belief that he is a threatened participant in the Investigation

---

[116] ROB 37.

[117] *Mooney*, 2015 WL 3413272, at *4 (referring to the plaintiff's allegation that he was an object of the FINRA investigation as "conclusory").

[118] *See* Indemnification Agreement § 5.

[119] *Id.* § 13(f).

is justified because (1) the DOJ requested to interview him,[120] and (2) MVMT directly and repeatedly signaled to him that his activities were a subject of the Investigation.[121]

MVMT next points to *Donahue v. Corning*[122] as an example of a case in which this court "denied advancement because there was not a threatened proceeding that actually implicated the petitioner."[123]  *Donahue* is not analogous here.  There, the plaintiff was removed for cause after rejecting an offer for a reduced role at the defendant.  *Donohue*, 949 A.2d at 576.  In the lead up to the plaintiff's removal, he "threatened, through his words and actions, that he would seek an adversarial proceeding if the defendants removed him."  *Id.*  "At no point" was there any indication that "any type of civil, criminal, administrative, or investigative claim, action, suit or proceeding" would be initiated against him.  *Id.*  Instead, the plaintiff initiated a lawsuit against the defendants.  *See id*. at 575.

---

[120] *See, e.g.*, Bhaskaran Decl. ¶¶ 6, 8; POB 10 ("[T]he DOJ requested Manche's interview"); *see also* POB 10 n.4 ("MVMT speculates Manche's counsel offered Manche for an interview so he could demand advancement.  As explained by the attorney who communicated with the DOJ, that speculation is wrong.  Manche's counsel did not offer an interview and, to date, has not agreed to one.") (citing Bhaskaran Decl. ¶¶ 2–3).

[121] *See, e.g.*, Pet. Exs. D at 23, E at 4; Friedman Aff Exs. C, D at 13 n.3.

[122] 949 A.2d 574 (Del. Ch. 2008).

[123] ROB 39.

The plaintiff sought to enforce his advancement rights, despite the relevant agreement forbidding advancement for offensive claims. *See id.* at 575–76, 579. The relevant agreement only provided advancement rights where the plaintiff's involvement was defensive or responsive. *See id.* at 576. The plaintiff argued "that a for cause removal equates to an accusation that he breached his fiduciary duties to [the entity]." *Id.* at 580. As the court explained, "[t]he problem with [the plaintiff]'s argument is that he cannot identify the threatened [p]roceeding that he is defending or disposing of by bringing this suit. The only explicit threat by the defendants was that they would remove him for cause. . . . But a for cause removal under the terms of the Agreement is not a Proceeding as contemplated by the Advancement Provision." *Id.* at 581.

This case differs from *Donohue*. Manche has identified a Proceeding contemplated by the Indemnification Agreement: the Investigation.[124] It is undisputed that his conduct while at MVMT is a subject of the Investigation, and MVMT's attempt to call into question the fact that the DOJ requested an interview from Manche falls flat.[125] MVMT's argument that Manche's role in the Investigation is too uncertain to warrant advancement fails. Manche is a

---

[124] *See generally* Bhaskaran Decl.

[125] *See, e.g.*, Pet. Exs. D at 23, E at 4; Friedman Aff Exs. C, D at 13 n.3.

threatened participant in the Investigation; his capacity is covered under the Indemnification Agreement.

Next, MVMT argues that the court's decision in *Weil v. VEREIT Operating Partnership*[126] supports its position,[127] focusing on language where the *Weil* court said "for purposes of the advancement right in this case, it is not met if an individual only believes, however reasonably, that the individual could become a target of the investigation."  2018 WL 834428, at *9.  The quote is accurate, but *Weil* does not support MVMT's position for two reasons. First, the *Weil* court was analyzing an advancement provision that required an individual to be a "party" to a covered proceeding.  *Id.*  Here, Manche need not be a party, he simply needs to be involved in some capacity ("as a party or otherwise").[128]  Second, the *Weil* court suggested the outcome there would have been different—meaning the plaintiffs' reasonable belief they would become a target of the government investigation would be enough for advancement—if the applicable agreement's advancement provision matched its indemnification

---

[126] 2018 WL 834428 (Del. Ch. Feb. 13, 2018).

[127] RAB 23–24; *see also* Tr. 52.

[128] The *Weil* court noted "it may not always be clear when an individual is a 'party' to an investigative proceeding" but expressed the view that an individual is a party "if the party conducting the investigation seeks documents or other information from the individual or interviews the individual."  2018 WL 834428, at *9.  This suggests that something less formal than a request for documents and information or an interview can trigger coverage if the relevant advancement provision, like Section 5 of the Indemnification Agreement, requires something less than "party" status.

provision and "extend[ed] to situations where the Indemnitee is 'threatened' with being made a party." *Id.*[129]

### 3. Manche Did Not Initiate a Proceeding or Part of a Proceeding

MVMT's next argument is that Manche is not entitled to advancement under the Indemnification Agreement because he is seeking advancement for a Proceeding he initiated, thus triggering the advancement exclusion in Section 9(c) of the Indemnification Agreement.[130]   MVMT argues that, by "affirmatively initiat[ing] contact with the [DOJ] on October 6, 2025," he initiated a Proceeding, or part of a Proceeding, against MVMT.[131]   MVMT further argues that the lack of timely notice MVMT received of Manche's contact with the DOJ suggests that "any purported potential interview with the Government actually originated with an offer by Manche to sit down with the Government[.]"[132]   This argument fails for two reasons.

---

[129] Further favoring Manche, the plaintiffs in *Weil* had not themselves received a government subpoena, only entities—the defendant and a non-party—in which the plaintiffs held positions. *Id.* at *2. The court was satisfied that "[t]he plaintiffs also have explained why the subpoenas threatened the [plaintiffs] with being made party to the Investigations," but denied advancement because the plaintiffs "must also show that they are parties to the investigation, which they have not done." *Id.* at *9.

[130] *See* ROB 17–18 n.17; 50–51.

[131] *Id*. at 17–18 n.17.

[132] *Id*. at 50.

First, MVMT's argument that Manche requested or might have requested the interview is based on speculation, unsupported by any specific facts.[133] The record assembled on summary judgment shows otherwise.[134] Manche's counsel declared under penalty of perjury that the DOJ requested to interview Manche.[135] She made the same representations in September correspondence to

[133] *See, e.g.*, *id*. at 29 n.17 ("*If* Manche's counsel affirmatively initiated contact with the Government on October 6, 2025, or affirmatively offered to make Manche available for an interview or proffer—which Manche has not denied to date—then not only would Section 9 of the Indemnification Agreement bar advancement on the ground that the Proceeding at issue in this Action was initiated by Manche, but also means this case falls even more squarely within *Mooney* because Manche inserted himself into the Investigation."); 50 ("The only information Manche ever provided MVMT about purported communications with the Government was the December 22, 2025 letter[.] . . . The only logical conclusion to make from this and from the timeline posted by Manche is that he has not actually been threatened with a Proceeding—that any purported potential interview with the Government actually originated with an offer by Manche to sit down with the Government, and that any purported proffer agreement from the Government was requested by Manche's counsel. Otherwise, Manche would have no reason to delay over 2.5 months to notify MVMT."); RAB 28 ("Nothing in the record indicates that the Government has filed any action against Manche, used the words 'request' (orally or in writing) with respect to Manche, nor issued a subpoena or document request to him."); *see also* RAB 5 ("There is no request to Manche. His counsel states that the Government purportedly 'expressed an interest in interviewing Manche.'"). *But see, e.g.*, Bhaskaran Decl. ¶¶ 6, 8.

[134] *See, e.g.*, Bhaskaran Decl. ¶¶ 6, 8; POB 10 ("[T]he DOJ requested Manche's interview"); *see also* POB 10 n.4 ("MVMT speculates Manche's counsel offered Manche for an interview so he could demand advancement. As explained by the attorney who communicated with the DOJ, that speculation is wrong. Manche's counsel did not offer an interview and, to date, has not agreed to one.") (citing Bhaskaran Decl. ¶¶ 2–3).

[135] Bhaskaran Decl. ¶¶ 6, 8; *see also* 10 *Del. C.* § 3927(a) ("To the extent authorized by court rule, any matter, except as otherwise provided in subsection (b) of this section, that is required or permitted by the laws of this State to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same, such matter

MVMT.[136] MVMT presents no "specific facts showing that there is a genuine issue" related to the DOJ's request to interview Manche. MVMT instead, in its only concrete argument against this fact, argues that the lack of notice to MVMT of the interview request suggests that Manche offered himself to the DOJ.[137] But, under Rule 56, that is not enough to create a genuine issue for trial.[138]

Second, Manche did not initiate the Investigation or his threatened participation in it by his counsel's contact with the DOJ. The Investigation had already begun when Manche's counsel contacted the DOJ.[139] Manche's criminal counsel contacted the DOJ "to gather facts in order to advise Manche

---

may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, verification, certificate, or statement, in writing of such person which is subscribed by him or her, as true under penalty of perjury, and dated, in substantially the following form[.] . . ."). The Bhaskaran Declaration complies with the required form. *Compare* 10 *Del. C.* § 3927(a), *with* Bhaskaran Decl. at 5.

[136] *See* Bhaskaran Decl. Ex. A ("Mr. Manche is evaluating whether to go forward with that request—and he has incurred substantial legal expenses that are directly related to the DOJ's request to interview him."); *id.* at 2 ("[T]he far majority of the expenses directly relate to the DOJ's request to interview Mr. Manche."); *id.* ("Unredacted entries would provide MVMT unwarranted insight into the details of Mr. Manche's response to the DOJ's request[.]").

[137] *See* ROB 50–51.

[138] *See* Ct. Ch. R. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided on this rule, *must set forth specific facts showing that there is a genuine issue for trial*. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.") (emphasis added).

on whether he should invoke his Fifth Amendment rights in the Prior Action"—which is an issue MVMT's counsel raised therein.[140] That contact does not make the DOJ's subsequent request for an interview an "initiated proceeding or part of a proceeding" against MVMT. An interviewer's request for an interview is separate from a potential interviewee's earlier request for clarification.

### 4. The Prior Action Confidentiality Order Does Not Negate Manche's Right to Advancement

MVMT next argues that "the only way [Manche] found out about the Subpoena and Investigation was from MVMT's 'Confidential' disclosures in the [Prior] Action."[141] MVMT observes that, under Section 4 of the Prior Action Confidentiality Order, "Confidential Discovery Material can only be used for purposes of this Litigation and cannot be used for any other purpose, including, without limitation, any business or commercial purpose."[142] MVMT notes that it "formally produced the Subpoena itself pursuant to the [Prior Action] Confidentiality [Order.]"[143] Because of this, MVMT contends,

---

[139] *See* Bhaskaran Decl. ¶ 3.

[140] *See* Email from Joanna Forster to Terrence M. Grugan, et al. (Sept. 16, 2025), Friedman Aff. Ex. C.

[141] ROB 47.

[142] *Id*. at 46 (quoting Stipulation and Order for the Produc. and Exchange of Confidential Info. ("Prior Action Confidentiality Order"), Smith Aff. Ex. 5 ¶ 4).

[143] *Id*. at 47.

Manche's reliance on information that was subject to the Prior Action Confidentiality Order "stands as a bar/complete defense to [Manche]'s advancement action, both as a matter of law and policy."[144]

In response, Manche avers that this "argument comes with particular ill grace" because MVMT failed to disclose—for months—the Investigation it represents implicates Manche's activities at MVMT, even though MVMT represented it formed a basis for Manche's removal.[145]  Manche also points to Section 24 of the Prior Action Confidentiality Order, which states that "[i]f any Confidential Discovery Material is used in open court during any proceeding . . . the material loses its confidential status and becomes part of the public record, unless the Producing Person applies for and obtains an order from the Court specifically maintaining the confidential status of the material."[146]   Manche asserts that the existence of the Subpoena and Investigation lost confidential status because they were "discussed in an open [c]ourt hearing in the Prior Action on October 22, 2025, with no confidentiality assertion by either party."[147]

---

[144] *Id.* at 46.

[145] POB 19.

[146] *See id.* at 17 (quoting Prior Action Confidentiality Order ¶ 24).

[147] *Id.* at 17–18 (quoting Prior Action Tr. 8–9).

I agree with Manche that the existence of the Subpoena and Investigation, and its associated confidential discovery material, lost confidential status by being discussed in open court without any confidentiality assertions. Manche's counsel explicitly raised the existence of the Subpoena and Investigation in open court[148] which, as MVMT concedes, Manche learned of through its confidential discovery disclosures. MVMT, however, failed to "appl[y] for and obtain[] an order from the Court specifically maintaining the confidential status of the material" as the Prior Action Confidentiality Order requires.[149] For that reason alone, the material "lo[st] its confidential status and bec[ame] part of the public record[.]"[150] Accordingly, Manche did not violate the Prior Action Confidentiality Order when he relied on the Subpoena to seek advancement under the Indemnification Agreement.

Manche's counsel's October 6 communication with AUSA Kleinman also did not violate the Prior Action Confidentiality Order. Manche's counsel relied on the existence of the Subpoena and Investigation to contact the DOJ

---

[148] *See* Prior Action Tr. 8–9 ("And we now know that there is *a completely separate fact[-]finding investigation* that's occurring that [MVMT] apparently has been cooperating with all along . . . . [MVMT] should have disclosed that receipt of [the Subpoena] to Mr. Manche when he was on the board, when they, by their own admission, took board action *based on that subpoena* but withheld that information from Mr. Manche.") (emphasis added).

[149] *See* Prior Action Confidentiality Order ¶ 24. MVMT does not argue it sought such an order, nor does it argue the parties failed to "confer in good faith on procedures to protect the confidentiality of any of the Confidential Discovery Material." *Id.*

"to gather facts in order to advise Manche on whether he should invoke his Fifth Amendment rights in the Prior Action in light of the Investigation[.]"[151] MVMT itself prompted the issue in the Prior Action during discussions about Manche's deposition.[152] This is a proper use under paragraph 4 of the Prior Action Confidentiality Order.[153]

The transmission of any confidential material in the foregoing instance is also proper under paragraph 7 of the Prior Action Confidentiality Order. Paragraph 7 of the Prior Action Confidentiality Order allows transmittal of confidential material to "any person indicated on the face of a document or accompanying cover letter, email, or other communication to be the author, addressee, or an actual or intended recipient of the document[.]"[154] Manche's counsel contacted the Assistant United States Attorney that signed the

---

[150] *Id*. ¶ 4.

[151] Bhaskaran Decl. ¶ 3.

[152] *See* Email from Joanna Forster to Terrence M. Grugan, et al. (Sept. 16, 2025), Friedman Aff. Ex. C ("[P]lease advise us by the end of the day Thursday Sept. 18, 2025 if your client intends to testify substantively or invoke his 5th Amdt. right in response to questions.").

[153] *See* Prior Action Confidentiality Order ¶ 4 ("Confidential Discovery Material can only be used for purposes of [the Prior Action] and cannot be used for any other purpose, including, without limitation, any business or commercial purpose.").

[154] *Id*. ¶ 7.

Subpoena.[155]   Accordingly, Manche's counsel's use and transmittal of confidential material did not violate the Prior Action Confidentiality Order.

MVMT's arguments that Manche or his counsel violated the Prior Action Confidentiality Order fail.  They will not be considered in denying Manche's advancement rights.

### 5. The Timing of Manche's Disclosure of His Counsel's Communications with AUSA Kleinman Do Not Preclude Advancement Under Section 16 of the Indemnification Agreement

MVMT finally argues that "Manche failed to meet his obligations under the Indemnification Agreement of providing MVMT with notice pursuant to Section 16.[156]  MVMT asserts that "[t]he only information Manche ever provided MVMT about purported communications with the Government was the December 22, 2025 letter, which was sent 2.5 months after the fact and fails to include the predicate facts necessary to comply with Section 16[.]"[157] MVMT makes two points from this assertion.  First, MVMT asserts that this failure to raise the potential interview timely suggests "that any purported potential interview with the Government, and that any purported proffer agreement from the Government was requested by Manche's counsel."[158]

---

[155] *See* Bhaskaran Decl. ¶¶ 4–5.

[156] ROB 49 (citation omitted).

[157] *Id*. at 50.

[158] *Id*.

– 45 –

Second, MVMT argues it has suffered prejudice from the failure to timely notify because Manche's fee requests would impose a financial burden upon MVMT.[159]

As earlier explained, Manche's delayed notice does not permit a reasonable inference that Manche offered himself to the DOJ for an interview. MVMT's second argument—that Manche's failure to provide adequate notice prejudiced MVMT—refers to section 16 of the Indemnification Agreement. Section 16 obligates Manche to

> promptly . . . notify [MVMT] in writing upon being served with or otherwise receiving any summons, citation, subpoena, complaint, indictment, information or other document relating to any Proceeding or matter which may be subject to indemnification covered hereunder. The failure to so notify [MVMT] *shall not relieve [MVMT] of any obligation which it may have to [Manche] under this Agreement* or otherwise *unless and only to the extent that such failure or delay materially prejudices [MVMT]*.[160]

It is undisputed that Manche delayed disclosure of his counsel's contact with the DOJ. Manche argues instead that his delay in disclosure was reasonable, given the fact that MVMT "concealed the Subpoena from Manche for more than four months[.]"[161] Manche also argues that the delay in notice

---

[159] *Id*. at 51.

[160] Indemnification Agreement § 16 (emphasis added).

[161] POB 22.

alone is not material prejudice, and that this is supported by the fact that, even after Manche disclosed the information, MVMT still rejects his entitlement to any advancement.[162] I agree with the latter argument.

MVMT's argument that the 11-week delay in receiving notice materially prejudices it because advancement imposes a financial burden is not supported by the Indemnification Agreement or Delaware law. First, as Manche notes, Section 16 of the Indemnification Agreement "states th[at] any delay 'shall not relieve [MVMT] of any obligation' absent material prejudice."[163] That language makes it clear that delay alone cannot constitute material prejudice.[164] Second, MVMT's argument that the increased financial burden resulting from the delay constitutes material prejudice is undercut by the fact that the financial burden complained of is, itself, a mandatory obligation MVMT contracted to undertake in the Indemnification Agreement. The inconvenience of MVMT's

---

[162] *See id*. at 22, 24.

[163] *Id*. at 24 (quoting Indemnification Agreement ¶ 24).

[164] *Cf. Schillinger Genetics, Inc. v. Benson Hill Seeds, Inc.*, 2021 WL 320723, at *13 (Del. Ch. Feb. 1, 2021) ("While February 10 is not 'prior to' the APA's survival period's expiration as facially required by Section 7.1, Defendant's claim of Notice was still valid by the grace of Section 7.5. That Section dictates that Defendant's indemnification right is only foreclosed by a 'failure to give such notice' under Section 7.1 'unless, and then only to the extent that, an Indemnifying Party is actually and materially prejudiced thereby.' On the Motion, Plaintiffs have offered no evidence of actual, material prejudice, and at argument, Plaintiffs could not identify any prejudice aside from the alleged breaching untimely notice itself.") (internal citations omitted).

– 47 –

compliance with its mandatory advancement obligation cannot constitute the material prejudice the Indemnification Agreement contemplates.[165]

### 6. Conclusion Regarding Manche's Entitlement[166]

In sum, I conclude that Manche "was, is, or will be" involved in the Investigation "as a party or otherwise" and is therefore entitled to advancement under Section 5 of the Indemnification Agreement. His involvement in the Investigation arose by reason of his Corporate Status and is not an initiated proceeding or part of a proceeding against MVMT. The Prior Action Confidentiality Order does not negate Manche's advancement rights, nor does

---

[165] *See, e.g.*, *Safe Harbor Fishing Club v. Safe Harbor Realty Co.*, 107 A.2d 635, 638 (Del. Ch. 1953) ("Mere inconvenience or substantial increase in the cost of compliance with a contract, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful.").

[166] MVMT also argues that Manche is not entitled to advancement "because Manche has failed to meet his burden of establishing that he has incurred expenses in connection with an advanceable Proceeding." ROB 42. MVMT maintains that "Manche refused to provide MVMT with even minimally unredacted invoices[.]" *Id.* at 43. These "heavily redacted invoices," MVMT argues, "preclude, as a matter of law, MVMT and the Court from determining if [Manche's] right to advancement has been triggered and if advanceable work has been performed." *Id.* at 44. Manche states in response that, "[a]t the proper time, [he] will demonstrate the cited entries relate to evaluating the impact of the Prior Action on the Investigation and, in particular, to consideration of whether Manche should, in an abundance of caution, assert a Fifth Amendment privilege if deposed." PAB 2–3. MVMT's argument is rejected at this time because, as MVMT recognizes, the present stage of this action only determines Manche's entitlement to advancement. *See* Dkt. 6 ("Unless the Magistrate orders otherwise, this action will proceed in a bifurcated manner. The court will first address the issue of entitlement to advancement and, if advancement is warranted, establish a procedure for challenges to the requested fees.").

the timing of his notice to MVMT of the DOJ contact. Manche is entitled to advancement of fees incurred in connection with the Investigation.[167]

## C. Manche is Entitled to Fees-on-Fees and Prejudgment Interest

Manche seeks fees-on-fees. Parties "who successfully prosecute an advancement suit are generally entitled to an appropriate award of fees for the expenses incurred in litigating the suit, unless the parties have agreed otherwise." *Thompson v. Orix USA Corp.*, 2016 WL 3226933, at *7 (Del. Ch. June 3, 2016). Such awards are necessary in order to ensure that successful plaintiffs receive the full value of their advancement right. *See, e.g.*, *Zaman v. Amadeo Hldgs., Inc.*, 2008 WL 2168397, at *39 (Del. Ch. May 23, 2008) (citing *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002)). Here, Manche was wholly successful in establishing he is entitled to advancement,

---

[167] MVMT also argues that advancement should be denied because "Manche violated the implied duty of good faith and fair dealing that is imputed into every contract." RAB 47; *see also* ROB 49 n.23 (arguing same). MVMT argues in its answering brief that Manche violated the implied duty of good faith and fair dealing when his counsel contacted the DOJ. *See* RAB 47–48. But as previously explained, Manche did not contact the government to offer his involvement in the Investigation and MVMT failed to put that in genuine dispute. In any event, Manche is correct that the implied covenant of good faith and fair dealing "cannot be invoked 'when the contract addresses the conduct at issue.'" *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 920 (quoting *Oxbow Carbon & Minerals Hldgs., Inc. v. Crestview-Oxbow Acq. LLC*, 202 A.3d 482, 507 (Del. 2019)). MVMT's argument fails because Section 9 of the Indemnification Agreement governs instances where self-initiated actions cancel MVMT's advancement obligation. *See* Indemnification Agreement § 9(c).

and the parties did not agree to depart from this default principle in a way less favorable to Manche, so Manche is entitled to fees-on-fees.[168]

Manche is also entitled to prejudgment interest. MVMT did not argue against prejudgment interest in either of its briefs, so it has waived any argument that prejudgment interest would be inappropriate.[169] In any event, prejudgment "interest is awarded 'for the period of time when [MVMT] unjustifiably refused to provide advancement[.]'" *Krauss v. 180 Life Scis. Corp.*, 2022 WL 665323, at *10 (Del. Ch. Mar. 7, 2022) (quoting *Citrin v. Int'l Airport Ctrs. LLC*, 922 A.2d 1164, 1167 (Del. Ch. 2006)). Here, that is 30 days after Manche demanded advancement.[170]

---

[168] Section 7(d) of the Indemnification Agreement, which provides for fees-on-fees without regard to Manche's success in establishing he is entitled to advancement, is evidence that the parties intended to depart from this default in a way even more favorable to Manche. I held earlier in this case that Section 7(d) of the Indemnification Agreement does not entitle Manche to unconditional fees-on-fees because such provisions are void as against public policy for Delaware corporations. *See* Order Denying Pet'r's Mot. for Reconsideration of Magistrate's Dec. 11, 2025 Ltr. Decision, Dkt. 16 (citing *Levy v. HLI Operating Co.*, 924 A.2d 210, 217 (Del. Ch. 2007); *Nielsen v. EBTH, Inc.*, 2019 WL 4733865, at *15 (Del. Ch. Sept. 30, 2019); *Lieberman v. Electrolyte Ozone, Inc.*, 2015 WL 5135460, at *7 (Del. Ch. Aug. 31, 2015)). But this ruling on Section 7(d) does not affect Delaware's general approach to awarding fees-on-fees to successful plaintiffs in advancement entitlement cases.

[169] *See, e.g.*, *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) (citations omitted).

[170] *See* Indemnification Agreement § 5; *cf. Krauss*, 2022 WL 665323, at *10.

## IV. CONCLUSION

For the reasons explained above, I grant Manche's motion for summary judgment and deny MVMT's motion for summary judgment. This is a report under Court of Chancery Rule 144. In accordance with the Chancellor's assignment letter,[171] any party who wishes to file exceptions to this report must file their notice of exceptions by March 11, 2026.

If no exceptions are taken by March 11, or the Chancellor or a Vice Chancellor affirms this report after exceptions, then within five business days of the expiration of the exceptions deadline or the issuance of an affirming decision from a constitutionally appointed officer of this court, the parties must meet and confer and submit a proposed order implementing this decision that includes a plan for resolving fee disputes similar to the plan laid out by the court in *Danenberg v. Fitracks*.[172]

---

[171] Dkt. 6.

[172] *Id*. (citing *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 1003–04 (Del. Ch. 2012)).